BAKER v. DELANO.

1. RAILROADS — EVIDENCE — PRESUMPTIONS — DUTY TO STOP, LOOK AND LISTEN.

Evidence that decedent, a man in good health, with good eyesight and hearing, was struck by a switch engine at defendant's crossing, that there was an electric light over the sidewalk at one side of the crossing which was lighted, and the evening was dark and cloudy, and the view up the tracks was unobstructed for a distance of 500 feet, including also the testimony of eyewitnesses who saw the engine strike decedent, held, to justify the trial court in directing a verdict for defendant.[1]

2. EVIDENCE—PRESUMPTIONS—EFFECT.

The office or effect of a true presumption is to cast upon the party against whom it works the duty of going forward with evidence: it has the force and effect of a prima facie case and temporarily, at least, relieves the party in whose favor it arises from going forward with the evidence. If nothing further is adduced, it may settle the case in favor of the party for whom it works, and, on the other hand, when the other party has gone forward with his evidence and the prima facie case is overcome, the force of the presumption is spent.

3. SAME—CONTRIBUTORY NEGLIGENCE—PRESUMPTION OF DUE CARE.

The presumption that a decedent was free from contributory negligence can be said to apply only in cases where there is an absence of any direct evidence to the contrary, the question then being, Was there evidence before the trial court which could be said to overcome the presumption relied upon?

4. SAME—GROSS NEGLIGENCE—SUBSEQUENT NEGLIGENCE.

And where no claim of subsequent or discovered negligence on the part of the intestate was made in the lower court and the lookout had no reason to suppose that decedent would not do as his duty required in stopping,

---

[1]As to duty of pedestrian to stop, look and listen before crossing railroad track, see notes in 17 L. R. A. (N. S.) 505; 46 L. R. A. (N. S.) 702.

etc., before passing over the track, and there was nothing to show that the crew neglected to stop in time or take precautions to avoid striking decedent, the court committed no error in declining to submit the issue to the jury.

Error to Wayne; Gage, J., presiding. Submitted January 14, 1916. (Docket No. 44.) Decided March 31, 1916.

*Charles T. Wilkins*, for appellant.

*R. G. Lathrop* and *Smith, Beckwith & Ohlinger* (*Alexander L. Smith*, of counsel), for appellees.

Case by Effie Baker, as administratrix of the estate of John D. Baker, deceased, against Frederick A. Delano and others, receivers of the Wabash Railroad Company, a foreign railway corporation, for the unlawful death of plaintiff's decedent. Judgment for defendants on a verdict directed by the court. Plaintiff brings error. Affirmed.

Kuhn, J. The defendants, as receivers of the Wabash Railroad Company, operate cars, engines, and trains over the company's double tracks in the city of Detroit in an easterly and westerly direction between West Jefferson avenue and the Detroit river. The tracks cross Twenty-Fourth street, which runs in a northerly and southerly direction, and which crosses Lafayette boulevard and Fort street and West Jefferson avenue and these railway tracks in the order named, and extends to the Detroit river, where there were a dock and slip at the foot of the street.

John D. Baker, the plaintiff's decedent, on August 12, 1912, was a vessel captain and diver, 52 years of age and in good health, and of good eyesight and hearing. He had spent the day with Capt. Fred Manuel on the latter's vessel, lying at the dock at the foot of Twenty-Fourth street, where the deceased also had a small yacht lying for repairs. He had supper with

Capt. Manuel, and left his boat between 7 and 7:30 o'clock. About 7:30 p. m. he came into John Killakey's saloon on Twenty-Fourth street, near Lafayette boulevard, to get an envelope, and, not being able to get one there, he went out to get one elsewhere, and came back with it in about 20 minutes, addressed it, and in about 5 minutes went out again. After leaving Killakey's place about 8 p. m., deceased walked south toward the river on the sidewalk on the east side of Twenty-Fourth street, and, after having crossed the first, or northerly and west-bound, track, and as he was crossing the southerly and east-bound track, he was struck by a Wabash switch engine coming into the city from the west. When the engine stopped, the deceased, still alive, but not conscious, was lying between the north and south tracks, about 30 to 35 feet east of the walk. His injuries were very severe, and although he regained consciousness for a short time, he did not state how the accident occurred, and died before the hospital could be reached.

There was an ordinary electric street light over the sidewalk on the east side of Twenty-Fourth street, which was lighted that night, and there was no obstruction to his view for 500 feet westerly along the tracks. There was testimony to show that it was a quiet night, but dark and cloudy.

Four witnesses were sworn who saw the accident, three being sworn on behalf of the plaintiff and one on behalf of the defendant. Witness Arthur Manuel was behind the deceased and about 50 to 75 feet north of the tracks, going in the same direction. Witnesses Hoffman and O'Kalahan were south of the tracks, waiting for a friend whom they were expecting to come from the same direction that deceased came from. Witness Burk, sworn on behalf of the defense, was fireman on the engine, and saw the deceased before the engine struck him.

It is the claim of the plaintiff, who brings this action under the survival act, that the engine did not have the headlight lighted, that the bell was not rung, and that the engine was running about 12 miles an hour, in violation of the provisions of the statutes of the State and also of ordinances of the city of Detroit.

At the close of the proofs, the trial judge directed a verdict for the defendant, as he was convinced that under the facts as they were testified to, the deceased was clearly guilty of contributory negligence, and hence the plaintiff could not recover. The only question here for review is whether or not, considering the testimony in the light most favorable to the plaintiff's claim, the court erred in this regard.

It is the contention of plaintiff's counsel that the rule announced by this court in *Mynning* v. *Railroad Co.*, 64 Mich. 93, on page 102 (31 N. W. 147, on page 151; 8 Am. St. Rep. 804), that "the presumption of law is that a person killed at a crossing did stop, and look and listen, and will prevail in the absence of direct testimony on the subject" means that, notwithstanding testimony was introduced on behalf of the defendant by witnesses who saw the accident, the presumption would still remain, and would present a question for a jury to decide. It is insisted that "absence of direct testimony to the contrary" in the rule above quoted refers to direct testimony in support of the plaintiff's case. We are unable to find that this contention finds support in the decisions of this court. In *Adams* v. *Iron Cliffs Co.*, 78 Mich. 271, 277 (44 N. W. 270, 272; 18 Am. St. Rep. 441), it was said:

"Where there is no eyewitness of the accident, * * * while the rule is not relaxed that the plaintiff must show that his intestate was without fault, yet the presumption, in the absence of any evidence to the contrary, obtains that the deceased used ordinary care and caution in attempting the crossing, and such presumption is sufficient, under the rule, to permit the

plaintiff to recover upon showing negligence in the defendant."

In *Van Doorn* v. *Heap,* 160 Mich. 199 (125 N. W. 11), it was said, in speaking of this rule:

"The court evidently overlooked the line of decisions of this and other courts holding that, in the absence of proof tending to show the contrary, where a person is killed by an accident to which there were no eyewitnesses, the presumption of the law is that he was in the exercise of due care. *Adams* v. *Iron Cliffs Co.,* 78 Mich. 277 (44 N. W. 270, 18 Am. St. Rep. 441), and cases cited."

In *Folkmire* v. *Railways Co.,* 157 Mich. 159 (121 N. W. 811, 17 Am. & Eng. Ann. Cas. 979), this court said:

"Plaintiff's counsel urge the rule that we must presume that this woman was not negligent under the rule stated in the following cases: *Mynning* v. *Railroad Co., supra* (64 Mich. 93, 31 N. W. 147, 8 Am. St. Rep. 804); *Kwiotkowski* v. *Railway Co., supra* (70 Mich. 551, 38 N. W. 463); *Adams* v. *Iron Cliffs Co.,* 78 Mich. 277 (44 N. W. 270, 18 Am. St. Rep. 441); *Grostick* v. *Railroad Co.,* 90 Mich. 608 (51 N. W. 667); *Underhill* v. *Railway Co.,* 81 Mich. 45 (45 N. W. 508). See *Chesapeake, etc., R. Co.* v. *Steele,* 84 Fed. 93, 29 C. C. A. 81, and note. The difficulty is that overwhelming and undisputed evidence shows that she did not stop or even look after reaching a point where either would have done any good, but drove heedlessly upon the track, with the car in plain sight, but a short distance away."

The witnesses upon which the court relied to sustain this conclusion were witnesses produced by the defendant, as appears by the opinion. See, also, *Gilbert* v. *Railroad Co.,* 161 Mich. 73, page 79 (125 N. W. 745).

Mr. Elliott, in his work on Evidence, says (Vol. 1):

"SEC. 91. *Office and Effect of Presumptions.*—The office or effect of a true presumption is to cast upon the party against whom it works the duty of going forward with evidence. It has the force and effect of a *prima facie* case, and, temporarily at least, relieves

the party in whose favor it arises from going forward with the evidence. This would seem to be its sole office and effect, considered merely in its character as a presumption. If nothing further is adduced, it may settle the case in favor of the party for whom it works; and, on the other hand, when the other party has gone forward with his evidence and the *prima facie* case is overcome, the force of the presumption is spent. It may be directly rebutted by such evidence, or it may be shown thereby that it was never applicable to the particular facts, for it will be found that presumptions are usually very general in their nature, and lose their force and application when the specific facts of the case are shown. They are either based on facts in evidence, as presumptions of fact generally must be, or 'they presuppose only certain specific and expressed facts,' and the addition of other facts may make the presumption wholly inapplicable. Other rules of substantive law or procedure may apparently give the presumption a different effect, or prescribe that it shall take a certain amount of evidence to overcome it, as, for instance, the rule of criminal law, requiring guilt to be proved beyond a reasonable doubt, or in the case of conclusive presumptions of law; and so, on the other hand, if mere permissible inferences are to be considered as presumptions, they may not even have the effect of making a *prima facie* case; but with reference to true presumptions, we think it may be justly said, notwithstanding there is much conflict and confusion in the authorities, that their effect, and their only effect, considered merely as presumptions, is to make a *prima facie* case, and thus cast upon the other party the burden of going forward with the evidence, if he would not be defeated."

Also see Wigmore on Evidence, p. 3534, and 2 Best's Principles of Evidence (Am. Ed.), §§ 298, 299, and note in 33 L. R. A. (N. S.) 1085.

We are of the opinion that it is clear that it is the rule in this State that the presumption that a plaintiff is free from contributory negligence can be said to apply only in cases where there is an absence of any direct evidence to the contrary. The question then is,

Was there evidence before the trial judge which could be said to overcome the presumption relied upon? Witness Arthur Manuel testified:

"When we got within 75 or 100 feet of the crossing, I stopped awhile and looked, and Baker was about 50 to 75 feet ahead of me, about that distance from the railroad track. I was looking down towards the boat when this switch engine came through there without taking notice of him at all, and struck Baker on the crossing. I saw it strike him. My attention was first called to the switch engine when it passed me, as I was looking towards my uncle's boat; that is, the river. I saw the lights on the boat, was watching them some distance before that, and the engine came across and obstructed my view, and I saw it strike Baker. I never saw anything of the engine until it crossed Twenty-Fourth street. There was no bell rung. There was no headlight on the switch engine. I didn't notice it making any noise as it came down. Baker, when the engine struck him, was on the sidewalk crossing, going across the tracks, the last track, the south track, the south side."

Witness Hoffman testified:

"I saw Capt. Baker struck that night, and saw him before he was struck, walking down Twenty-Fourth street on the east side of the road. I did not see any engine coming on the Wabash tracks from the west. The first I knew of an engine coming was when they passed the crossing. I seen it after it got past. It was a switch pony engine. The first time I saw Baker he was going down Twenty-Fourth street. I looked again, and I didn't see him! He disappeared after the engine passed. I said, 'I wonder where that fellow went to.' I thought it was a friend of mine coming down there. I expected a friend to come down there, and was looking for him, and I took this to be my friend. I was not listening; I was looking for this friend at that time. The engine came up and the person disappeared, and I says to my friend, 'I guess that fellow must have got on that engine.' He says, 'No; he could not get on the engine, it was going too fast'; and we looked up the track, and we saw somebody lying in the middle of the track."

Witness O'Kalahan testified:

"I saw Capt. Baker coming south on the east side of Twenty-Fourth street, about 10 or 15 feet north of the railroad track when I first saw him. I didn't see any engine then. I first saw an engine when it flashed across the crossing. Capt. Baker just got down there. I noticed as soon as the engine passed there was nobody there. I didn't see the engine before I saw it pass. There wasn't any whistle blown, or any bell rung. I didn't see any light. As soon as I didn't see Mr. Baker, I ran over to the tracks. * * * I was standing with my friend Hoffman. I don't know as we were talking just at that moment or not. We had been talking, and were waiting for a friend to come to meet us. We expected our friend to come down Twenty-Fourth street, and were looking for him in that direction. We were looking right up the street, in general up towards the north. We were not looking towards the west, in the direction from which the engine came. We didn't know who it was coming down Twenty-Fourth street, but saw a man coming and found it to be Capt. Baker afterwards. It was so you could see."

Witness Burk testified:

"We were running between 5 and 10 miles an hour as we approached the crossing. I expected him to stop as anybody would. We were going along very quiet; we just passed the boulevard crossing to the west of Twenty-Fourth street—I should judge about 500 feet—and I saw a man coming down the east side of Twenty-Fourth street. There was an electric light there upon the walk, and I could see the figure of a man. He was coming down straight towards the track. When we were in a straight line with Twenty-Fourth street, he was upon the west-bound main line, that is, the north track, and just about the time we got to the walk, he went in front of the engine. I hollered at him just about the time he hit the pilot beam; it was just a fraction of a second after I hollered he was in front of the engine. He didn't look towards the engine. He went straight ahead. He didn't stop at all. After he was struck, the engine went the length of the engine, about 50 feet."

We are of the opinion that this testimony makes it clear that there were eyewitnesses of the accident who were able to, and did, give "direct testimony on the subject," and that consequently, under the authorities above cited, the presumption relied upon by the plaintiff was removed. This testimony also makes the conclusion irresistible that if the deceased had stopped, looked, and listened, it would have been a physical impossibility for him not to have been aware of the approach of the engine, no matter whether the bell was being rung or the lights were burning. There was no obstruction to his view for 500 feet along the tracks in the direction from which the engine was coming. A stop for a moment, or a momentary glance, would have apprised him of the danger. We see no escape from the conclusion that the circuit judge was clearly right in holding that the deceased was guilty of contributory negligence.

The case of *Amanta* v. *Railroad Co.*, 177 Mich. 280 (143 N. W. 76), cited by the plaintiff, is easily distinguishable, for there the plaintiff testified that he stopped, looked, and listened before going upon the tracks, but because of the noise of two other trains which had just passed, and because of the dirt, smoke, and steam caused by these trains, he was unable to see the approaching locomotive, running backward without any lights. It was held that this presented such a condition as would warrant the submission of the question of contributory negligence to the jury. In this case, however, it appears that it was not so dark but that his own witnesses saw him at distances varying from 50 to 75 feet, and that the fireman saw him approaching the tracks at a distance of 500 feet. Clearly, if these witnesses saw Baker, Baker would have seen the engine if he had looked. It being a quiet night, it also seems most improbable that he would not have heard it if he had listened.

It is also contended that the question of gross or subsequent negligence should have been submitted to the jury. No such claim was made in the court below, and in the case of *Weitzel·v. Railway*, 186 Mich. 7 (153 N. W. 831), relied upon, it clearly appeared that the question was considered by the trial judge. Neither, in our opinion, does the evidence warrant the submission of any such claim. The fireman had no reason to suppose that the deceased would not do as the law required him to do, viz., stop, look, and listen before going upon the tracks, and there is nothing to show that everything was not done by the crew of the engine to stop it after the man's peril was discovered.

Being satisfied that the trial judge properly directed a verdict for the defendant upon the evidence before him, judgment is affirmed.

STONE, C. J., and BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.