BRITTEN *v.* UPDYKE.

1. TRIAL—ADMISSION OF EVIDENCE—COMMENT ON EVIDENCE.
   Trial judge's rulings as to admissibility of evidence and comments made by him in course of trial arising from fatal injuries received by plaintiff's decedent while a passenger on left side of defendant's 14'6" inboard motor boat as it passed under a low bridge, including comment to witness, a passenger sitting between decedent and defendant, "at least, you didn't get hit when you were sitting there" *held,* not shown to have had any prejudicial effect upon jury warranting a finding of prejudicial error.

2. NEGLIGENCE—MOTORBOATS—INSTRUCTIONS—LOW BRIDGE—SPEED—INTOXICATING LIQUORS.
   Trial court's charge to jury in action by administrator of estate of passenger on left side of defendant's boat for fatal injuries sustained when driven under low bridge, which carefully stated appellant's theory of defendant's negligence that boat was there driven by intoxicated defendant at a high speed and caused to bank steeply in making a sharp turn to the right causing fatal injuries, *held,* not reversible for not having been given in language of plaintiff's requests, although subject to some improvement had it contained reference to statutes cited and to the fact that violation of them was negligence *per se.*

3. SAME—CONTRIBUTORY NEGLIGENCE—PRESUMPTION OF DUE CARE—INSTRUCTIONS—VERDICTS.
   Refusal of trial court to give plaintiff administrator's request to charge pertaining to a presumption of due care on the part of decedent, a passenger on left side of defendant's boat who was fatally injured when boat passed under low bridge, a request

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 76.
[2] 38 Am Jur, Negligence § 369.
[3] 38 Am Jur, Negligence §§ 364, 367.
[4] 3 Am Jur, Appeal and Error § 1003.

to which plaintiff was entitled *held,* nevertheless not reversible error, where jury's verdict specifically found defendant was not guilty of negligence, since the issue of contributory negligence was not reached.

4. APPEAL AND ERROR—NEW TRIAL—PREJUDICE.

A new trial will not be granted unless the error pointed out was such as to prejudice the result.

Appeal from Jackson; Simpson (John), J. Submitted June 4, 1959. (Docket No. 34, Calendar No. 47,845). Decided October 13, 1959. Rehearing denied November 24, 1959.

Case by Gordon W. Britten, administrator of the estate of Earl H. Walkey, deceased, against Clarence Updyke under the death act for damages arising from fatal injury to motor boat passenger. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Kelly, Kelly & Kelly,* for plaintiff.

*Haskell L. Nichols* and *H. Attix Kinch,* for defendant.

EDWARDS, J. Plaintiff appeals from denial of his motion for new trial after a Jackson county jury had rendered a verdict in favor of the defendant. The substantial questions presented pertain to claimed errors in the trial judge's charge to the jury.

Plaintiff's decedent, Earl Walkey, was killed almost instantaneously in a boating accident which occurred shortly after noon on Saturday, November 6, 1954, in the channel between Moon and Price lakes in Jackson county. The deceased was riding on the left side of the front seat of a 14' 6" motorboat driven by a 65-horsepower inboard motor. He was seated beside a friend named Howard Smith and the defendant, Clarence Updyke, who was driving from the right-hand driver's seat. As the boat was

going underneath a low bridge in the channel, deceased's head struck the last 2 of the beams or stringers which supported the bridge, with such force that he died almost immediately.

Physical facts of the accident showed that the left side of the boat struck the concrete piling, which was on the far side of the bridge, as the boat was emerging from under the bridge and after decedent's head had struck the bridge stringers. The point of impact was at and below the water line, at a point estimated to be 3' 8" to the rear of the seat in which the 3 men were riding. The markings made by the boat on the piling strongly suggested that the left side of the boat was heeled at least a foot out of the water at the time of impact with the piling.

Plaintiff's theory of the accident was that the defendant driver was intoxicated and that, as he was going under the bridge, he swung the boat in a sharp right turn, causing the left side of the boat to rise out of the water and decedent's head to strike the stringers.

Defendant's theory of the accident was that Walkey stood up while the boat was going under the bridge, and that the force of the blow to his head threw the boat off course.

Both of the other persons in the boat at the time of the accident testified. There were no other eyewitnesses.

Howard Smith related that he and plaintiff's decedent, Earl Walkey, were in a tavern together on the morning in question when a call came inviting them to take a ride in defendant Updyke's motorboat. Updyke sat in the front right-side driver's seat, Walkey sat on the far left front seat, and Smith sat between them. Smith estimated the speed of the boat at about 8 to 10 miles per hour as it approached the low level bridge from the west, traveling in an

easterly direction.   He stated that the boat was being driven straight under the bridge's center, between the piers or pilings.   He then gave the following testimony in relation to the events leading up to and immediately following the moment of accident:

"*A*. Well, just as we were coming to the bridge, my hair came blowing in my face, and Earl [decedent] says, 'Well, take his hat.'   I told him I didn't need it.   And he says, 'Go ahead and wear it.' And just as we got under the bridge, he turned around and started to put it on my head, and that is when he slumped over in my lap.

"*Q*. And you say that his body was against your body in the seat?

"*A*. It was, yes, sir.

"*Q*. Did you feel him raise up with your body?

"*A*. I did, sir.   *   *   *

"*Q*. So that you say you felt him raise up?

"*A*. Yes.

"*Q*. And turn around—

"*A*. Yes.

"*Q*. (Continuing)—and put this cap on your head?

"*A*. Yes sir.

"*Q*. And, then, his head fell on your lap.

"*A*. Yes.

"*Q*. It all happened in how long?

"*A*. Well, just like that (indicating).

"*Q*. Just an instant?

"*A*. Yes.   *   *   *

"*Q*. Then, what did you do when his head fell in your lap?

"*A*. I yelled to Clarence [defendant.].   *   *   *

"*Q*. State whether or not when Mr. Walkey's head came in contact with that first beam, state whether or not that beam was west of the northeast abutment?

"*A*. Yes, it would be.   *   *   *

"*Q*. What happened to the boat after his head hit the beam?

"*A*. Well, that swerved it   *   *   *   to the left."

Defendant Clarence Updyke's testimony was substantially the same as Howard Smith's in relation to the events leading up to the boat ride, the speed of the boat as it proceeded under the bridge, and its course. Updyke further testified that as he was proceeding under the bridge Smith yelled to him that decedent was hurt. He turned his head and saw decedent's head tilted back, blood rushing from his head and nose. He did not see decedent until after he was hurt, and could not recall any swerving of the boat. He also denied having had any intoxicating drinks prior to or during the boat ride.

Other relevant testimony included a conflict of opinion between a deputy sheriff and a State policeman who reported to the scene of the accident as to defendant Updyke's condition. The deputy testified that he thought defendant was under the influence of intoxicating liquor, and the State policeman testified that he was not.

Mrs. Walkey testified on the issue of damages and on cross-examination, bearing on the question of her husband's contribution to her support, related a conversation with an acquaintance who expressed regret at her husband's death. She denied responding "good riddance." The acquaintance was produced by defendant's counsel as their last witness and testified emphatically that she had, indeed, used just those words applicable to her recently deceased spouse. His testimony was not shaken on cross-examination. This testimony was admitted as bearing on the issue of pecuniary damages, and no issue as to it is brought to us on appeal.

The trial judge reserved decision on a motion for a directed verdict and submitted the case to the jury. The jury returned a verdict for the defendant in these words: "We, the jury, find the defendant not guilty of negligence."

Appellant presents 15 issues for our review on appeal. The first 6 represent claims of error in the trial judge's charge to the jury. The next 8 issues pertain to claimed errors in ruling on or commenting on evidence in the course of the trial, while the 15th suggests error in the trial judge's denial of a motion for new trial.

We have reviewed all of the issues pertaining to rulings during the course of the trial. In relation to all of the issues except one, we agree with the trial judge's reasoning or consider his ruling well within his discretion. The exception pertains to his refusing to strike his own comment to witness Smith, "At least, you didn't get hit when you were sitting there." Whether this comment from the judge had any prejudicial effect would depend in large measure upon how it was said. As to this, we have no guide from this record. We certainly do not find warrant for considering it reversible error.

Appellant places his principal reliance upon his first stated issue, pertaining to the charge, which he states as follows:

"The court erred in refusing to give plaintiff's requested charges Nos 7, 8 and 9.

"This is the principal ground for this appeal in view of the jury's specific finding that defendant was 'not guilty of negligence.'

"Plaintiff's theory of his case, as it pertained to defendant's negligence, was clearly set out in his declaration.

"Plaintiff charges that 'defendant steered, operated and propelled his said motorboat in a careless, reckless, willful, wanton, and grossly negligent manner, and at a high and dangerous rate of speed, and while under the influence of intoxicating liquor while passing through said channel and under said bridge as a direct result of which' the accident occurred and plaintiff's decedent was killed."

The cited requests to charge detailed appellant's claims as to excessive speed and intoxicated driving and made reference to statutes prohibiting same in relation to driving motorboats.

We note that the trial judge did not make reference to the statutes in his charge as given.

But in the charge we do find a careful statement of appellant's theory:

"It is the plaintiff's claim that the distance from the top of the water to the underside of the bridge was approximately 42 inches. The plaintiff claims that the defendant was fully aware of the low clearance of the bridge.

"The plaintiff further claims that while the defendant was under the influence of intoxicating liquor, defendant drove his boat under the low bridge at a high and dangerous rate of speed, and while passing under the low bridge, caused the boat to make a sudden sharp turn to the right. That the boat banked steeply in the turn and Mr. Walkey's head was thrust up into the underside of the bridge and struck the crossbeams or stringers with great force and violence, thereby causing serious injuries to Mr. Walkey which resulted in his death."

We also find that he instructed the jury that plaintiff had to establish by a fair preponderance of the evidence:

"That Mr. Updyke was guilty of negligence in the manner charged in the plaintiff's declaration, and that reads as follows:

" 'That the defendant steered, operated and propelled his said motorboat in a careless, reckless, wilful, wanton and grossly negligent manner, and at a high and dangerous rate of speed, and while under the influence of intoxicating liquor while passing through said channel and under said bridge as a direct result of which said motorboat was driven into, against and upon the pilings of said bridge with great force and violence and the head of plaintiff's de-

cedent struck the underside of said bridge with great force and violence, inflicting personal injuries upon plaintiff's decedent that caused his death.' "

The judge did not give the requested charges in appellant's own words. He had no obligation to do so. *Schattilly* v. *Yonker*, 347 Mich 660. We think the charge would have been improved by reference to the statutes cited by appellant and to the fact that violation of them was negligence *per se*. Yet the trial judge did submit in his own words an accurate version of plaintiff's theory and the essential elements of plaintiff's claims of negligence. Taking the charge as a whole, we believe it informed the jury that if they found proof of intoxicated driving or excessive speed on the part of defendant, such acts constituted negligence.

The only other issue of substance pertaining to the charge concerns the trial judge's refusal to give plaintiff's requested instruction pertaining to a presumption of due care on the part of decedent.

Plaintiff was, of course, deprived of decedent's testimony by his death. The trial judge apparently felt, however, that the testimony of witness Smith and defendant Updyke on decedent's contributory negligence* was "so conclusive that reasonable and unprejudiced minds could not fail to be convinced that decedent was careless." *Gillett* v. *Michigan United Traction Co.*, 205 Mich 410, 421. In any event, he did not charge that the jury should entertain a presumption that decedent was acting with due care unless they found contrary and credible testimony.

On this record, we think he should have. We believe that the basic issues were properly submitted

---

* This case was tried before the adoption of the rule requiring defendant to bear the burden of proof on the issue of plaintiff's contributory negligence. Court Rule No 23, § 3a, adopted April 14, 1958. 352 Mich xiv.

to the jury, but that plaintiff was entitled to a charge concerning a presumption of due care on the part of decedent. *Gillett* v. *Michigan United Traction Co.*, *supra; Steger* v. *Blanchard,* 353 Mich 140; *Weller* v. *Mancha,* 353 Mich 189. Cf. *Tien* v. *Barkel,* 351 Mich 276.

We do not, however, feel impelled to reverse on this issue. The jury, having expressly found that the defendant was not guilty of negligence as charged against him, manifestly accepted as to that question the testimony of witness Smith and defendant Updyke.

The form of the jury's verdict as reported was not made the subject of objection or motion. We regard it, as the trial judge apparently did, both as a specific finding of no negligence as charged and a general verdict for the defendant. We believe that the issue of decedent's contributory negligence was not reached by the jury and that the absence of instruction on the subject of presumed due care did not, in such circumstances, amount to reversible error. *Hulett* v. *Great Atlantic & Pacific Tea Co.,* 299 Mich 59; *Brown* v. *Berles,* 234 Mich 353; *Warwick* v. *Blackney,* 272 Mich 231.

We do not reverse for new trial unless the error pointed out was such as to prejudice the result.

Affirmed. Costs to appellee.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Voelker, and Kavanagh, JJ., concurred.