GARRIGAN v. LASALLE COCA-COLA BOTTLING COMPANY.

1. EVIDENCE—REBUTTABLE STATUTORY PRESUMPTION.

The evidence presented in a case involving a rebuttable presumption must be clear, positive, and credible evidence opposing the presumption in order to eliminate the presumption as a matter of law from the jury's consideration (CLS 1956, § 257.402).

2. AUTOMOBILES—REAR-END COLLISION—REBUTTABLE PRESUMPTIONS —STATUTES—EVIDENCE.

Instruction given in action arising from rear-end collision by plaintiff's 2-ton truck loaded with 7 tons of batteries with defendant's truck as latter was about to turn right at an intersection which withdrew from jury's consideration the rebuttable statutory presumption that driver of overtaking vehicle was negligent because credible evidence had been introduced *held*, error, under record showing defendant's truck had passed plaintiff some 750′ before reaching the intersection and plaintiff slackened his speed from 45 miles per hour down to only 40 miles per hour after defendant's truck had cut in sharply but continued without further reduction in speed 80′ behind defendant's truck until latter suddenly decelerated for a turn at the intersection, as defendant was entitled to have its defense of contributory negligence considered in the light of the presumption, where the evidence adduced tended to support, rather than oppose, the presumption (CLS 1956, § 257.402).

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial §§ 185–187.
[2] 5A Am Jur, Automobiles and Highway Traffic § 1026.

Appeal from Ingham; Salmon (Marvin J.), J. Submitted April 13, 1960. (Docket No. 5, Calendar No. 48,311.) Decided January 9, 1961. Rehearing denied February 28, 1961.

Case by William Ernest Garrigan against LaSalle Coca-Cola Bottling Company, a Delaware corporation, for personal injuries sustained in collision of motor vehicles on February 26, 1958. Verdict and judgment for plaintiff. Defendant appeals. Reversed and new trial granted.

*H. Donald Bruce,* for plaintiff.

*Stanton & MacKenzie* (*H. Monroe Stanton* and *Robert E. Plunkett,* of counsel), for defendant.

Souris, J. Decision in this case turns upon error committed in the trial court's jury charge prejudicial to defendant's right to trial by jury. Involved here is an attempted rebuttal of a rebuttable presumption, the statutory presumption of negligence which arises upon the happening of a rear-end collision. CLS 1956, § 257.402 (Stat Ann 1960 Rev § 9.2102). The ultimate facts are these:

Plaintiff's truck collided with the rear of defendant's truck on US–23 near the intersection of Coggins road. Defendant's truck had passed plaintiff's and, shortly thereafter, had rapidly decelerated to make a right turn near Coggins road just prior to the collision.

In the trial court's charge to the jury is found the following instruction:

"If a motor vehicle traveling in a certain direction overtakes and strikes the rear end of another vehicle proceeding in the same direction or lawfully standing upon any highway and there is an absence of evidence as to the facts and circumstances surrounding such collision, the driver of the motor vehicle striking the

other vehicle in the rear end is deemed prima facie guilty of negligence in so doing, that is, the law presumes that he was guilty of negligence in so doing in the absence of evidence explaining the necessity therefor or rebutting such presumption of negligence.

"Now in this case we have evidence as to the facts and circumstances surrounding this collision. Therefore, you will not indulge or apply that presumption, rather, you are to determine from a consideration of all the evidence whether or not the plaintiff was guilty of contributory negligence by reason of his vehicle striking the rear end of the defendant's vehicle."

When the trial court undertakes to eliminate a statutory presumption as a matter of law from the jury's consideration, at the very least there must be clear, positive, and credible evidence *opposing* the presumption. See *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410; *Cebulak* v. *Lewis,* 320 Mich 710 (5 ALR2d 186); *Krisher* v. *Duff,* 331 Mich 699; and *Britten* v. *Updyke,* 357 Mich 466.

In the case at bar plaintiff's testimony (apart from variant testimony given by other witnesses), upon which the trial court relied in directing the jury to disregard the presumption, may fairly be summarized as follows:

Plaintiff was driving his 2-ton, flat-bed truck, loaded with used automobile batteries weighing 7 tons, in the right lane of the 2 southbound lanes of US-23 at 45 miles per hour. 750 feet before reaching Coggins road, defendant's Coca-Cola truck, going in the same direction, passed plaintiff on his left and cut in to the right lane of the highway "rather short" about 20 or 25 feet in front of plaintiff's truck. Plaintiff reduced his speed from 45 to 40 miles per hour, and the distance between the 2 trucks gradually increased to about 80 feet. When the Coca-Cola truck reached

the intersection, its brake lights went on. The plaintiff is testifying:

"*Q.* Now at that point you were still how far behind him.?

"*A.* Well, at that point I was still about 80 feet behind him.

"*Q.* What did you do?

"*A.* As soon as his brake lights come on, I put my brakes on, all the brakes I had. I put my foot brake on and reached over and grabbed the hand brake.

"*Q.* Did you observe anything further?

"*A.* Well, all  *  *  *  I didn't observe anything, only that he went on into the intersection, past the middle of the intersection.  *  *  *

"*A.* I had no indication of what he was going to do other than to stop and I could see no reason for him stopping in that position in the center of the road.

"*Q.* Where was the defendant's truck at that particular time?  *  *  *

"*A.* The left side of the right-hand lane.

"*Q.* Did you have any reaction to the defendant's conduct of pulling up here and hitting his brakes?  *  *  *

"*A.* Well, I had no, it just looked to me like his wheels locked like he stopped, something happened suddenly. I didn't know what. He just stood right on its nose, like he had just decided to do something.

"*Q.* Now during this time what was the status in regard to your brakes?

"*A.* I had all the brakes on that I had. I was pulling on the emergency brake as well, and watching for what he might do next.

"*Q.* All right. Did he continue to move forward even after he had hit his brakes here?

"*A.* Yes. He moved forward with the brakes on, stopping suddenly. But he moved forward a short distance into the intersection.

"*Q.* Did there appear to be a time when he had almost stopped his vehicle?

"*A.* Yes, sir. * * *

"*Q.* At that time you were coming up here with your brakes on? (Indicating)

"*A.* By that time I was about a truck length back of the intersection, applying my brakes fully and looking out of the corner of my eye to see what he would do next.

"*Q.* And what did he do next? What did you see?

"*A.* Just as I entered the intersection I noticed his front wheels turn right. * * *

"*Q.* * * * Now when he turned right, was his vehicle stopped or moving?

"*A.* From where I sat, it appeared to be stopped, but apparently it was moving real slow."

Plaintiff swung his truck to the left in an effort to avoid collision, but the right front of his truck hit the rear of the Coca-Cola truck, causing very substantial injuries to plaintiff.

In our view, the foregoing summary of the evidence does not so certainly oppose the presumption to justify the trial court's withdrawal of the presumption from the jury's consideration as a matter of law. Indeed, it may be said that plaintiff's own testimony tends to support, rather than oppose, the statutory presumption of his own negligence.*

A jury would be entitled to find that the evidence offered to rebut the statutory presumption instead discloses plaintiff's lack of concern for his own safety and the safety of others. Reduced to the simplest meaningful terms, plaintiff's testimony was that after defendant's truck had passed him and had cut into the lane in which he was driving, about 20 or 25 feet in front of him, "causing me to use my brakes

---

* In *Linabery* v. *LaVasseur*, 359 Mich 122, plaintiffs relied upon the same statutory presumption to establish defendants' negligence, but a majority of this Court ruled that there was evidence which caused the presumption to disappear. Justices BLACK and KAVANAGH dissented.

briefly," plaintiff reduced his speed from 45 to 40 miles per hour; that he pursued defendant's truck without further slackening the speed of his own 2-ton truck overloaded with 7 tons of car batteries; that 700 to 750 feet from the point at which he was passed by defendant's truck, plaintiff was only 80 feet behind it and still traveling at 40 miles per hour; and that when defendant's truck was suddenly decelerated for a turn, plaintiff could not bring his 7-ton load to a stop even with "all the brakes on" that it had within the assured clear distance ahead (CLS 1956, § 257.627, as amended by PA 1957, No 190 [Stat Ann 1957 Cum Supp § 9.2327]).

Defendant's driver's negligence in cutting in on plaintiff's right-of-way and in attempting a sudden right turn near Coggins road may be conceded for our purposes here, but does plaintiff's testimony (that he slowed down from 45 to 40 miles per hour and then did nothing more to accelerate the increase in the distance separating the 2 trucks) tend to rebut the statutory presumption of his contributory negligence? A properly instructed jury could find that it does, but certainly a jury could find also that it does not.

In any event, this record does not present such clear, positive, and credible presumption-rebutting evidence that would justify elimination of the presumption by the trial court as a matter of law. Defendant was entitled to have its defense considered in the jury room, distinguished from the courtroom, in the light of such statutory presumption. The jury should have been instructed to apply the presumption unless it found from the evidence that the presumption had been rebutted.

Reversed and remanded for new trial. Costs to defendant.

SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred with SOURIS, J.

BLACK, J. (*concurring*). The opinion Mr. Justice
SOURIS has proposed for this case is a step in the
right direction, and I have signed it. More needs be
said, however. That opinion, assuming it receives
majority support, decides only that the judge-
weighed testimony in this jury-tried case of Garri-
gan, unlike the judge-weighed testimony in the jury-
tried case of *Linabery* v. *LaVasseur,* 359 Mich 122,
did not—as a matter of law—destroy the statutory
"presumption" of negligence. Which is to say that
the trial lawyers and trial judges of Michigan are
obliged to guess anon whether the rule of automatic
disappearance, late of *Linabery* and formerly of
*Schillinger* v. *Wyman,* 331 Mich 160, will or will not
be applied in future like cases. Surely, "As a weder-
cok that turneth his face with every wind,"[1] we have
repudiated, and then affirmed, and then by *Linabery*
have repudiated again, the once-stabilized rules of
*Gillett* v. *Michigan United Traction Co.,* 205 Mich
410.

Does an admittedly applicable presumption "dis-
appear" (vanish with finality, that is) during trial of
a case when the first—or, for that matter, the last
—of a series of witnesses relates his version of the
testimonially disputatious issue to which the pre-
sumption has attached?[2] Today, failing to overrule
*Linabery* and yet reversing Judge Salmon, we give
no answer. With the handing down of these opinions
we have our trial judges whipsawed to an impossible
position; that of trying to figure out whether *Lina-
bery* or *Garrigan* will receive the nod should a like
rear-end collision case, then at hand, arrive by ap-
peal in the Supreme Court of Michigan.

---

[1] Robinson, Poems of Chaucer (Cambridge ed), Against Women
Unconstant, p 676.—REPORTER.

[2] Consider the analogous presumption of due execution and at-
testation of a contested will and our treatment thereof in *In re
Dalton Estate,* 346 Mich 613, and *In re Dettling Estate,* 351 Mich
335, 341.

Steadily through the supposed transitional period
1956 through 1959 we have been over this evidentiary
ground (*Welty* v. *Wolf Estate,* 345 Mich 408, 419;
*Cary* v. *Thomas,* 345 Mich 616, 633, 634; *Hett* v.
*Duffy,* 346 Mich 456, 462–472, 476; *Detroit Auto-
mobile Inter-Insurance Exchange* v. *Powe,* 348 Mich
548, 555, 556; *Steger* v. *Blanchard,* 350 Mich 579;
*Weller* v. *Mancha,* 351 Mich 50, 63, 64; *Tien* v. *Barkel,*
351 Mich 276, 285; *Shaw* v. *Bashore,* 353 Mich 31, 39;
*Steger* v. *Blanchard,* 353 Mich 140; *Weller* v. *Mancha,*
353 Mich 189, 194; and *Britten* v. *Updyke,* 357 Mich
466, 473, 474), with result apparently settled in favor
of *Gillett's* general rule[3] that an applicable presump-
tion vanishes, or does not vanish, depending on jury
appraisal of testimony which, assertedly and pos-
sibly, has rebutted the presumption.

Then came *Linabery,* and *Linabery's* restoration
of "the egregious errors of the past."[4]  Little wonder
the whispered rumor that some of our trial judges
have in recent months commenced tossing coins to
determine which case or line of cases should be fol-
lowed in making up jury instructions, peremptory
or otherwise, for negligence cases.  Does *any* testi-
mony tending to rebut an applicable presumption

---

[3] "While the above may serve as a rough classification of the deci-
sions relative to the presumption of due care, it will be seen that
the real test in each case is whether or not the evidence tending
to show contributory negligence, be it direct or circumstantial, is
so conclusive that reasonable and unprejudiced minds could not
fail to be convinced that decedent was careless.  If there is room
for reasonable doubt, the question must be submitted to the jury.
And while the jury, in weighing the evidence, may not consider
the presumption, yet if, uninfluenced by the presumption, they reach
the conclusion that the evidence tending to show decedent's negli-
gence is not entitled to credit and should be disregarded, the pre-
sumption may then be considered as remaining in force so far
as may be necessary to establish the fact that the deceased exercised
proper care in all respects not expressly established by the evi-
dence. *It was not entirely displaced, but remained in abeyance
pending the jury's reaching this preliminary decision as to the
credence to be given the evidence on the particular point in which
negligence was claimed.*" (*Gillett, supra,* p 421, emphasis supplied.)

[4] The expression is that of Mr. Justice SMITH, written in *Sheppard*
v. *Michigan National Bank,* 348 Mich 577, 582.

destroy that presumption, then and there? Or, as in the years when this statute[5] came first to judicial attention (*Depue* v. *Schwarz*, 222 Mich 308), is a presumption rebutted only by "direct, positive and credible evidence"? Or, as in *Britten* v. *Updyke*, *supra*, is it overcome simply by "credible" testimony? If an affirmative answer to the last question is made the rule of the day, who determines the question of credibility; the judge, or the jury? Oh, yes, our trial judges do have new problems; problems created rather than solved by the unsteady ebb and flow of opinion-signature around our hallowed conference table.

When the judge, presiding at jury trial of a negligence case, assumes to instruct that an admittedly applicable presumption has vanished, he should have before him "direct, positive and credible rebutting evidence" on the basis of which he really may pronounce death sentence for the presumption.[6] . Otherwise the question whether such presumption has been overcome should be settled—on proper instruction of course—in the jury room.

It is regrettable that this Court, duty-bound as it is to lay down dependable rules for the guidance of lawyers and judges, is not ready to reiterate these helpful precepts of the 1920's as the year 1961 plunges into time. As said by Mr. Justice Fellows in *People* v. *Rich*, 237 Mich 481, 497: "We are not only deciding this case, but we are also laying down rules for the guidance of the judiciary and the profession in future cases."

---

[5] "In any action, in any court in this State when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this State, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence." (CLS 1956,' § 257.-402 [Stat Ann 1960 Rev § 9.2102].)

[6] See *Gillett*, pp 415, 416.

It simply is not true that a presumption vanishes when some witness testifies in apparent contradiction thereof. The testimony given by such witness might be shown, on cross-examination or otherwise, as being so palpably false that no one in the courtroom would give it credit. Examine *Cebulak* v. *Lewis*, 320 Mich 710, 716–727 (5 ALR2d 186), and *Krisher* v. *Duff*, 331 Mich 699, 705–713, where each plaintiff prevailed on strength of the statutory presumption of "knowledge and consent" despite devout testimony in each case to the contrary. Any valid presumption, being provisionally applicable in a negligence case, disappears *as a matter of law* when and only when it is overcome in the evidentiary circumstances made clear in *Gillett, Cebulak,* and *Krisher*. And it disappears *as a matter of fact* when and only when, the trial being to a properly instructed jury, the jury—not the judge—finds credible testimony which rebuts the presumption.

Now let us examine the testimonial record to ascertain—under the precepts of *Gillett, Cebulak,* and *Krisher* rather than *Linabery*—whether the statutory presumption of negligence on the part of this rear-end collider "disappeared" during the trial.

Plaintiff repeatedly testified that defendant's truck overtook and passed him, *and resumed position in the extreme right-hand traffic lane,* when it was "about 750 feet" from the intersection; that at such time his truck was "about 30 feet" behind defendant's truck; that the distance between the 2 trucks was thereafter increased to "about 80 feet"; that for 11 to 12 seconds (this is plaintiff's own estimate) he followed defendant's truck at a distance of approximately 80 feet and at an estimated speed (this again is plaintiff's estimate) of 58 to 60 feet per second. This, prima facie, was continuously too fast and too close, as testified mutely by the collisive force and actual re-

sult of the dual impacts of truck against truck and load against cab.

Assuming as against presently related physical facts that plaintiff's estimate of separational distance and approximate common rates of speed of the 2 trucks was credible, it is preponderantly evident that plaintiff causally violated 2 traffic safety statutes, the mandatory requirements of which combine in making up *the* primary rule of traffic safety. Given ample time and distance within which to conform with the "assured clear distance rule" (CLS 1956, § 257.627, as amended by PA 1957, No 190 [Stat Ann 1957 Cum Supp § 9.2327])[7] and the statutory inhibition against following "another vehicle more closely than is reasonable and prudent" (CLS 1956, § 257.643 [Stat Ann 1960 Rev § 9.2343]), plaintiff's testified failure to safely increase the driving space between the southbound trucks of the parties persuasively became a concurrent cause of that which ensued damagewise. Is it, considering these statutes with the presumption, exculpatorily proper to pursue another motor vehicle at such speed and separating space when the pursuer is operating a 7-ton loaded truck equipped with brakes designed for a lighter load? Is the statutory presumption destroyed, by such proof, as a matter of law? The physical facts and other testimony give—or tend to give—fair answer to these questions.

The unusual violence of this collision (on a dry and tractive pavement and in broad daylight) testifies persuasively that plaintiff transgressed, with legally foreseeable result, the 2 statutes cited above. It required the nearly-one-hour labor of a garage crew, utilizing hacksaws and hydraulic jacks, to extricate him from the cab of his truck. The effect of emergency application of brakes and the impact of

---

[7] Amended since this cause of action arose, PA 1959, No 76.— Reporter.

collision hurled plaintiff's 7-ton load of car batteries forward, against the rear of the steel cab, as "the motor came back," thus crushing plaintiff between the forced-together fore and aft portions of the cab. It was necessary to saw off the hinges of the cab door and to saw the steering column completely off at 2 separate points, and then to jack the crumpled front and rear of the cab apart, before plaintiff could be and was removed to an ambulance. Does proof like this rebut the statutory presumption, as a matter of automatous law? If it does, the statute is lifeless and useless.

When during the 750-foot distance traveled by the 2 trucks the space between them was increased to 80 feet (as plaintiff says), it was far from enough to satisfy the traffic safety requirements of the cited statutes. The first is regularly referred to as "a rule of safety" (*Ruth* v. *Vroom,* 245 Mich 88, 91 [62 ALR 1528]; *Lewis* v. *Yund,* 339 Mich 441, 444), and it calls imperatively for maintenance of that distance between the pursued vehicle and the pursuing vehicle as will enable the driver of the latter to avoid the very kind of traffic carnage this record portrays. So, when the pursuing driver violates these statutory rules of safety, he does not render the statutory presumption ineffective. Instead, he confirms its applicability to him.

So far, presumption and "contrary" proof standing in array before us, I have accepted plaintiff's testimony generally at face value. Now I would look to the rest of the record to ascertain whether such presumption should have been ousted from the case by instruction.

The record shows beyond doubt that the primary cause of plaintiff's multiple injuries was the impact of the 7-ton blow from behind as his truck smashed into the truck ahead. Plaintiff himself testified that the "load had shifted on the bed and dented the back

of the truck and it had me pinned where I couldn't move, couldn't take a deep breath." The investigating officer (member of the State police force) testified that the shift of the load forward, on impact, was "what actually pinned Mr. Garrigan in." This testimony becomes understatement upon examination of photographic exhibit No. 6, showing from the driver's side the crunched-from-the-rear cab of plaintiff's truck. The cab was not built or bulkheaded to withstand such an impact as the combination of emergency application of brakes and the stopping force of collision hurled the load forward.

This is not all, as we examine the question whether plaintiff credibly overcame the statutory presumption. He testified:

"*Q.* Now, there isn't any question but what it was the front end of your truck that collided with the rear end of the Coca-Cola truck, is there?

"*A.* No. That's right.

"*Q.* When the stoplights went on on the Coca-Cola truck, you say you were about what, 40 or 50 feet behind it?

"*A.* No. I was about 80 feet behind it.

"*Q.* You were about 80 feet behind it. And you were going how fast?

"*A.* I was going about 40 miles an hour.  *  *  *

"*Q.* Well, at any rate, you were following 80 feet behind the Coco-Cola truck when he applied his brakes, you were unable to stop within that 80 feet, is that correct?

"*A.* Yes, sir."

Plaintiff was following defendant's truck too closely, speed and available deceleration considered. He was violating the assured-clear-distance rule and, adding to the culpability of his negligence, was carrying a load which meant continuous danger to him as well as those who—negligently or otherwise— were using of corresponding right the highway

ahead.[8]  Let us suppose that, instead of the heavy—
and heavily armored and more unyielding—Coca-
Cola truck ahead, the slowing and planned-for-turn
vehicle had been an ordinary automobile driven by
the head of a dependent family and he, the head of
that family, had been killed by the force of Mr. Gar-
rigan's rear-end blow?  Would not the beneficiaries
of the resultant cause for wrongful death enjoy, at
start of the trial at least, the benefit of 2 presump-
tions one the presumption of the defendant driver's
negligence and the other the presumption of due care
of the decedent?  The answer of course would have
to be "yes."

My Brother CARR's opinion considered, however,
both presumptions would disappear as soon as the
defendant driver or, say, some hitchhiker riding with
him, commences his testimony to the manner and
cause or causes of such rear-end collision.  Thus
some of our members would open the way—again
as in the sad days of *Schillinger, supra*—to more
and more directed verdicts in wrongful death cases
where the bereaved family has no witnesses to meet
the testimony of one whose right of weight has pre-
vailed at the scene of tragedy.

*To recapitulate*:  No one disagrees with the gen-
eral rule that a rebuttable presumption cannot be
weighed against testimony.  Lay, then, that word-
play aside.  When some Brother writes, however,

---

[8] To overload a motor truck, or to load any motor truck to
capacity in such way that its load is apt to be driven forward
into or through the rear of the cab by the combination of emergency
deceleration and straight-ahead collision, and then to drive such truck
on modern superhighways at more than extremely moderate rates
of speed, is potent evidence of negligence.  See, in such connection,
ICC safety regulations 192.9 and 193.85, quoted in the appendix.
"These regulations have been in effect since June 1, 1952, and
must be complied with by all motor carriers (49 CFR 193.1).  Having
been made in pursuance of constitutional statutory authority, they
have the same force as though prescribed in terms by the statute.
*Atchison, T. & S. F. R. Co.* v. *Scarlett* (1937), 300 US 471, 474 (57
S Ct 541, 81 L ed 748); *Interstate Motor Lines, Inc.*, v. *Great West-
ern R. Co.* (1947) (CCA 10), 161 F2d 968." *New Amsterdam
Casualty Co.* v. *Novick Transfer Co.* (CCA 4), 274 F2d 916, 919.

that a presumption—any presumption—"disappears" upon admission of *some* or *any* testimony tending to oppose or contradict it, we divide sharply. The right rule, as I read our considered cases, is simply this: If the proof received in rebuttal is "direct, positive and credible," and is free from doubt, the trial judge is justified in casting the presumption out of the case. If such proof is not "direct, positive and credible," or is subject to some doubt, then the jury is instructed to determine the legal fate of the presumption. The jury considers the rebuttal proof and, if the members find such proof to be of no value, it applies the presumption which has "remained in abeyance pending the jury's reaching this preliminary decision." If, on the other hand, such rebuttal proof is by the jury found worthy, then the presumption, so held in abeyance, "disappears." *Gillett, Cebulak,* and *Krisher* make this a rule of reason; which the automatic disappearance rule is not.

This particular statute was placed in our books more than 40 years ago. It was placed there for the protection of the motoring public. It remains in effect today as originally worded. Its evidentiary strengh (yes, "evidentiary strength") is if anything greater than that of its counterpart of motordom: the statutory presumption of "knowledge and consent" (CLS 1956, § 257.401 [Stat Ann 1960 Rev § 9-.2101]). The reason is that this particular statute does something more than create "a mere presumption." The requisite premises established (as they are in this case), it "deems"—adjudges that is—a prima facie case of guilt of negligence on the part of the rear-end collider. Whether such prima facie case has been overcome is, in the absence of direct, positive and credible rebutting evidence, a question for consideration and determination of a properly instructed jury.

In this instance the prima facie case, made by the statute in conjunction with plaintiff's declaration, was not overcome as a matter of law.   Whether it was overcome in fact cannot be determined until a duly-instructed jury reports back.

Some of us, lawyers all on and off the bench, look hopefully to that day when the Supreme Court of Michigan emerges from this Dickens-depicted legal fog[9] long enough to say, firmly, that the prima facie case of negligence made by the act of 1919[10] is overcome—as a matter of law—when and only when the record justifies peremptory instruction that the rear-end collider has acquitted himself of negligence. Until then, I stand by the rule of *Gillett, Cebulak,* and *Krisher.*

## APPENDIX

Sections 192.9(a) and 193.85 of "Motor Carrier Safety Regulations" promulgated by the interstate commerce commission under 49 USCA, § 304—taken from revision of 1952 including amendments as of December 31, 1957.   49 CFR 1960 Supp.

"Sec. 192.9 *Safe loading*—(a) *Distribution and securing of load.*   No motor vehicle shall be driven nor shall any motor carrier permit or require any motor vehicle to be driven if it is so loaded, or if the load thereon is so improperly distributed or so inadequately secured, as to prevent its safe operation."

"Sec. 193.85 *Protection against shifting cargo.* Every motor vehicle carrying cargo such as beams, pipes, sheet steel, and heavy rolls, the nature of which is such that the shifting thereof due to rapid deceleration or accident would be likely to result in penetration or crushing of the driver's compartment must,

---

9 Read first chapter of "Bleak House."
10 PA 1919, No 236 (CL 1948, § 256.511 [Stat Ann § 9.1691]), re-enacted by PA 1949, No 300, § 402 (CLS 1956, § 257.402 [Stat Ann 1960 Rev § 9.2102]).—REPORTER.

in addition to having the load securely fastened or braced, be provided with header boards or similar devices of sufficient strength to prevent such shifting and penetration. All motor vehicles shall be so constructed or be equipped with adequate cargo fastening devices so that the load will not penetrate the cargo compartment wall when subjected to the maximum braking deceleration of which the vehicle is capable."

CARR, J. (*dissenting*). While operating his truck in a southerly direction on US–23 in Bay county, plaintiff ran into the rear of a vehicle owned by defendant and operated by its employee. As a result plaintiff sustained severe personal injuries and his motor vehicle was badly damaged. He instituted this action for damages on the theory that the negligence of defendant's employee was a proximate cause of the accident, and the jury returned a verdict in his favor.

Section 402 of the Michigan vehicle code* (CLS 1956, § 257.402 [Stat Ann 1960 Rev § 9.2102]) provides in part as follows:

"In any action, in any court in this State when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this State, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator."

On the trial of the case plaintiff testified at some length with reference to the manner in which the accident happened and the operation of the vehicles in-

---

* PA 1949, No 300, as amended (CLS 1956, § 257.1 *et seq.*, as amended [Stat Ann 1957 Cum Supp § 9.1801 *et seq.*]).

volved therein. Other proofs were received as to the occurence. It was, of course, within the province of the jury to draw reasonable inferences from the testimony of the witnesses. Apparently the trial judge concluded that the proofs offered were credible and charged the jury as follows:

"If a motor vehicle traveling in a certain direction overtakes and strikes the rear end of another vehicle proceeding in the same direction or lawfully standing upon any highway and there is an absence of evidence as to the facts and circumstances surrounding such collision, the driver of the motor vehicle striking the other vehicle in the rear end is deemed prima facie guilty of negligence in so doing, that is, the law presumes that he was guilty of negligence in so doing in the absence of evidence explaining the necessity therefor or rebutting such presumption of negligence.

"Now in this case we have evidence as to the facts and circumstances surrounding this collision. Therefore, you will not indulge or apply that presumption, rather, you are to determine from a consideration of all the evidence whether or not the plaintiff was guilty of contributory negligence by reason of his vehicle striking the rear end of the defendant's vehicle."

Mr. Justice SOURIS has written for reversal and the granting of a new trial on the ground that the excerpt above quoted from the charge was an erroneous statement of the law, and prejudicial to defendant. With that conclusion we are unable to agree. It will be noted that the statute in question creates merely a rebuttable presumption. It has been repeatedly recognized by this Court in prior decisions that under factual situations analogous to that in the case at bar such a presumption may not be given the force of evidence, or weighed against evidence, and that the issue involved must be determined on the

basis of proofs. Such was the result in the instant case.

In *Gillett* v. *Michigan United Traction Co.*, 205 Mich 410, 414, 415, it was said:

"It is now quite generally held by the courts that a rebuttable or prima facie presumption has no weight as evidence. It serves to establish a prima facie case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself. In 1 Elliott on Evidence, § 91, p 114, it is said:

" 'It (the presumption) may be directly rebutted by such evidence, or it may be shown thereby that it was never applicable to the particular facts, for it will be found that presumptions are usually very general in their nature, and lose their force and application when the specific facts of the case are shown;'

"—and further (§ 93, pp 116, 117):

" 'A presumption operates to relieve the party in whose favor it operates from going forward in argument or evidence, and serves the purpose of a prima facie case until the other party has gone forward with his evidence, but, in itself, it is not evidence, and involves no rule as to the weight of evidence necessary to meet it. * * * It is sometimes said that the presumption will tip the scale when the evidence is balanced. But, in truth, nothing tips the scale but evidence, and a presumption, being a legal rule or a legal conclusion, is not evidence. * * * It is not probative matter, which may be a basis of inference and weighed and compared with other matter of a probative nature.'

"See, also, 4 Wigmore on Evidence, § 2491; 2 Best's Principles of Evidence (Am Ed), §§ 298, 299; note in 33 LRA NS 1085; Thayer's Preliminary Treatise on Evidence (1898), Appendix B, p 551. A discus-

sion of this subject will also be found in *Baker* v. *Delano,* 191 Mich 204, at p 208."

It is significant to note that the Court in its opinion further called attention to the distinction between mere circumstantial evidence having slight tendency to rebut the presumption and direct, positive, and credible proof. In the case at bar the testimony offered by plaintiff was not circumstantial in character, nor was it incredible. It is significant in this respect that the jury in reaching its verdict in plaintiff's favor quite obviously accepted his version of the facts involved in the accident, and from the facts to which the witnesses had testified drew inferences supporting the verdict returned.

In *Patt* v. *Dilley,* 273 Mich 601, defendant ran into the rear of an automobile which had stopped to permit a tire to be changed. As a result of the impact plaintiff was severely injured. In charging the jury the trial court called attention to the statute creating prima facie guilt of negligence on the part of the operator of a motor vehicle running into the rear of another vehicle standing on the highway or proceeding in the same direction as the latter vehicle. The following language was used (pp 605, 606):

" 'Now the meaning of that, that he shall be deemed prima facie guilty of negligence, is that the collision itself is evidence of negligence on the part of such a driver. But that may be refuted, it may be rebutted by other evidence introduced or offered in the case, and it is only evidence of negligence.' "

In holding that the charge was erroneous, it was said (p 606):

"The prima facie presumption could not be considered by the jury as any evidence of negligence because the facts appeared and the presumption could not be weighed or considered at all against the facts. *Hanna* v. *McClave,* 271 Mich 133."

The case of *Linabery* v. *LaVasseur*, 359 Mich 122, decided February 26, 1960, presented issues of fact and of law analogous to those involved in the case at bar. There defendant driver ran into the rear of an automobile owned by one of the plaintiffs, and operated by the other. The jury returned a verdict in favor of defendants, and plaintiffs appealed. Among other claims advanced by appellants in support of their contention that the case should be reversed was the failure of the trial judge to grant a request to charge that the fact that defendants' driver ran into the rear of plaintiffs' vehicle made him prima facie guilty of negligence. In rejecting such claim, and in discussing the case of *Corbin* v. *Yellow Cab Co.*, 349 Mich 434, it was said (p 126):

"In *Corbin,* as distinguished from the instant case, plaintiff had good reason to stop, for a train and lineup of cars ahead of her, she saw defendant approaching behind her, signalled her intention of stopping, and came to a stop slowly. In that case this Court, in finding, under the evidence or paucity thereof in that case, no error in the trial court's instruction similar to that here requested by plaintiffs, nonetheless said concerning the presumption here in question (p 440), that 'It is the rule that in the absence of evidence, the presumption applies.' There was no absence of such evidence at bar. On the contrary, there was evidence that the plaintiff either slowed down or stopped suddenly, for no apparent reason, without giving any signal of her intent so to do. Here there was evidence which, as said in the case of *Patt* v. *Dilley*, 273 Mich 601, caused the presumption to disappear. As held in that case, under such circumstances, the giving of an instruction, as plaintiffs requested, would have been error."

Among decisions supporting the general proposition that a rebuttable or prima facie presumption may not be given weight as evidence, and cannot be weighed against evidence, are *Madyck* v. *Shelley*, 283

Mich 396 (1938 US AvR 134, 1 CCH Av 748) ; *Blodgett* v. *Snobble,* 295 Mich 374 ; *In re Kanera's Estate,* 334 Mich 461 ; *Hooker* v. *Tucker,* 335 Mich 429 ; and *Straith* v. *Straith,* 355 Mich 267.

Under the factual situation presented here, it is apparent that there was credible testimony before the jury, which the verdict returned indicated the jury believed, with reference to the manner in which the accident happened and the operation of the motor vehicles involved. We are not confronted by a situation in which the proofs were merely circumstantial or of such nature as to raise a serious question as to their credibility. The trial judge charged the jury in the light of the situation before him and in accordance with the principle of law recognized in prior decisions of this Court. In so doing he was not in error. The questions of negligence and contributory negligence were for the jury to determine on the basis of the proofs, without giving force and effect to the prima facie presumption created by the statute.

We find no reversible error in the case and the judgment should be affirmed, with costs to appellee.

Dethmers, C. J., and Kelly, J., concurred with Carr, J.