[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 135 
This is an appeal in a will contest. Judson P. Grow, the testator in question, died April 2, 1939, at the age of 74 years. Mr. Grow was *Page 136 
married the second time in 1916, and he and his wife lived in the township of Waterford, Oakland county, until the month of June, 1937, when they separated, the wife getting a divorce the following October. Mrs. Grow died in April, 1938. On February 8, 1938, Mr. Wilmot, an attorney-at-law, drafted a will for Mr. Grow. In this will there was recognition of certain nephews and nieces who were given small amounts. Mrs. Scott, Mr. Wilmot's secretary, received a bequest of $2,500, and Mr. Wilmot was named executor of the proposed will.
Later, Mr. Grow went to Mr. Wilmot's office to have a new will drawn. Mr. Wilmot refused to draft the new will, but gave Mr. Grow the name of Earl L. Phillips, an attorney, who had an office near Mr. Wilmot's. On August 18, 1938, Mr. Grow went to Mr. Phillips' office with a carbon copy of the previous will and a penciled memorandum. Mr. Phillips drafted the new will and returned to Mr. Grow the memorandum and the copy of the previous will.
The new will provided for bequests to nephews and nieces and the following bequest to Hope G. Scott:
"All the residue and remainder of my estate, real, personal and mixed, of whatsoever nature and description, including cash, of which I shall die seized, I give, devise and bequeath unto Hope G. Scott, of Detroit, Michigan, absolutely and forever. This bequest and legacy I make because of the unfailing efforts and kindnesses of said Hope G. Scott to me and in my behalf in the past and as a means of compensating the said Hope G. Scott in the services she has rendered to me, and the assistance she has given me in looking after and managing my affairs for which she has received no compensation."
It appears that Hope G. Scott had known Mr. and Mrs. Grow since the summer of 1935. She helped *Page 137 
them with their stocks and bonds. After the divorce of Mr. and Mrs. Grow, Mrs. Scott began to visit Mr. Grow at his home in Waterford. She brought him custards and other delicacies, and wrote him letters. In January or February, 1938, Mr. Grow loaned her $265, and in July, 1938, she obtained a loan from Mr. Grow of $1,800. On several occasions Mr. Grow visited at her apartment in Detroit.
The executor offered the will for probate, objections were filed to the will, and the proposed will was certified to the circuit court for hearing. The cause came on for trial, and at the close of contestants' proofs the proponents of the will made a motion for a directed verdict, which was granted by the trial judge. In denying a motion for a new trial, the court made the following statement: "There was no testimony of mental incapacity or undue influence that rose above a speculative character that presented a factual situation for the jury."
Contestants appeal and contend that the questions of undue influence and mental capacity to make a will were questions that should have been submitted to the jury. Contestants also contend that they were entitled to cross-examine Hope G. Scott upon the theory that she was an adverse witness.
Upon the question of mental capacity, the burden of proving lack of mental capacity is upon contestants. In re Walker'sEstate, 270 Mich. 33.
The rule as to capacity to make a will is well stated inRe Walker's Estate, supra, 37, where we said:
"In general the requisite is that the testator must at the time of making his will have sufficient mentality to enable him to know what property he possesses and of which he is making a testamentary disposition, to consider and know who are the natural objects of his bounty, and to understand what the disposition *Page 138 
is that he is making of his property by his will."
See, also, In re Bowling's Estate, 291 Mich. 218.
Contestants urge that the testimony of the witness Howard Jewell, who operated a small grocery store across the street from Mr. Grow's home, was sufficient to take the issue of lack of mental capacity to the jury. He testified that his acquaintance with Mr. Grow began in the spring of 1937; that in the fall of 1937, Mr. Grow became crippled with rheumatism and as a consequence he was stooped and limped; that he was deaf; that he had the appearance of being unkempt; that his clothes were not kept cleaned and pressed; that he was unshaven and chewed tobacco; that he would come to the store and apparently not see or notice anything; that he would burst into tears and say he didn't know what he was crying about; and that about the fall of 1938, his attitude towards his nephews and nieces changed.
In Re Murray's Estate, 219 Mich. 70, quoting from the syllabus of Leffingwell v. Bettinghouse, 151 Mich. 513, we said:
" 'Instances of forgetfulness, habits of untidiness increasing with advancing years, and failure to exhaust the subject of conversations, afford no evidence of lack of testamentary capacity.' "
See, also, In re Cotcher's Estate, 274 Mich. 154.
In our opinion the testimony produced by contestants was not sufficient to present to the jury the question of mental capacity of Mr. Grow to make a will. At most it shows an old man growing more untidy with the advance of years. It does not show that he lost the capacity of knowing what property he had or who were the natural objects of his bounty.
It is next urged that there was testimony to show that the will was the result of undue influence. *Page 139 
The language used in Re Williams' Estate, 185 Mich. 97, 118,119, and quoted again in Re McIntyre's Estate, 193 Mich. 257,280, well illustrates the attitude of our court upon this subject. In that case we said:
" 'To vitiate a will there must be more than influence. It must be undue influence. To be classed as "undue," influence must place the testator in the attitude of saying: "It is not my will, but I must do it." He must act under such coercion, compulsion, or constraint that his own free agency is destroyed. The will or the provisions assailed does not truly proceed from him. He becomes the tutored instrument of the dominating mind, which dictates to him what he shall do, compels him to adopt its will instead of exercising his own, and, by overcoming his power of resistance, impels him to do what he would not have done had he been free from its control. * * * Influences to induce testamentary disposition may be specific and direct without becoming undue. It is not improper to advise, persuade, to solicit, to importune, to entreat, and to implore. Hopes and fears and even prejudices may be moved. Appeals may be made to vanity and to pride; to the sense of justice and to the obligations of duty; to ties of friendship, of affection, and of kindred; to the sentiment of gratitude; to pity for distress and destitution. It is not enough that the testator's convictions be brought into harmony with that of another by such means. His views may be radically changed, but so long as he is not overborne and rendered incapable of acting finally upon his own motives, so long as he remains a free agent, his choice of a course is his own choice, and the will is his will, and not that of another.' (Ginter v. Ginter,79 Kan. 721 [101 P. 634, 22 L.R.A. (N.S.) 1024])."
In our opinion, the most that can be said for the testimony produced by contestants is that there was *Page 140 
an opportunity for the exercise of undue influence, but as we said in Re Alvord's Estate, 258 Mich. 497:
"Mere opportunity to exercise undue influence, the fact that property is not disposed of in the manner that a judge or jury would have preferred, or the fact that beneficiaries appear not to be as deserving of testamentary bounty as others might be, do not, of themselves, affect the validity of the will."
See, also, In re Morris' Estate, 228 Mich. 555.
Contestants also urge that a confidential relationship existed between Mr. Grow and Mrs. Scott. For the purpose of this opinion we can assume that such a relationship existed, but Mr. Grow had independent advice of Mr. Phillips, an attorney of Pontiac, in the preparation of his will.
In Re Teller's Estate, 288 Mich. 193, we said:
"It is also claimed that there is a presumption of undue influence arising out of the fiduciary relationship between testatrix and the principal beneficiary, John A. Teller. The record affirmatively shows that when the will was executed the testatrix had the benefit of legal and independent advice from Don Van Winkle, a reputable attorney of Howell, Michigan. If there was any such presumption as claimed by contestants, it was overcome by the testimony of attorney Van Winkle."
The trial court was right in not submitting this issue to the jury.
It is also urged that contestants were entitled to cross-examine Hope G. Scott on the theory that she was an adverse witness. Mrs. Scott was called as a witness by contestants and the record shows over 30 pages of questions and answers of Mrs. Scott as she was examined by contestants. Under such circumstances, the contestants had the opportunity to *Page 141 
elicit from the witness all testimony material to issues involved. We are unable to see how her testimony would have been any different if she had been permitted to testify as an adverse witness. It was not prejudicial error to refuse contestants the right to call this witness as an adverse party.
We find no error in the trial of the cause and the judgment is affirmed, with costs to proponents.
BUSHNELL, BOYLES, CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred.