*In re* WOOD ESTATE.

FLEMMING *v.* HALL.

1. WILLS—FIDUCIARIES—PRESUMPTION OF UNDUE INFLUENCE—EVIDENCE.

Evidence presented in will contest, when viewed in the light most favorable to contestant on proponent's motion for directed verdict *held,* sufficient to establish existence of a confidential or fiduciary relationship between proponent and testator such as to raise a presumption that the receipt by proponent of benefits as a result of the will and codicil was secured by her undue influence, notwithstanding evidence showing that testator also received independent legal advice in execution of codicil to his will, hence, the order granting proponent's motion was error; overruling *In re Haskell's Estate,* 283 Mich 513, and *In re Teller's Estate,* 288 Mich 193.

2. SAME—BENEFITS TO FIDUCIARY—PRESUMPTION OF UNDUE INFLUENCE.

A confidential or fiduciary relationship is founded when trust or confidence is reposed by one, such as a testator, in the integrity and fidelity of another and, where the latter receives benefits as a result of such relationship, there arises a presumption that such benefits were procured by the exercise of undue influence.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 8] 57 Am Jur, Wills § 386 *et seq.*
Presumption and burden of proof as to undue influence on testator. 66 ALR 228, 154 ALR 583.
[2] 57 Am Jur, Wills § 389.
Presumption and burden of proof as to undue influence on testator. 66 ALR 228, 154 ALR 583.
[3] 57 Am Jur, Wills §§ 385, 403, 435.
[5, 9] 20 Am Jur, Evidence § 157.
[6] 20 Am Jur, Evidence § 159.
[7] 20 Am Jur, Evidence §§ 157, 166.
[10] 53 Am Jur, Trial § 332.
[11] 53 Am Jur, Trial §§ 508–510.
[12] 57 Am Jur, Wills § 449.
[13, 14] 53 Am Jur, Trial § 680.

3. Same — Undue Influence — Independent Legal Advice — Evidence.

Evidence that independent legal advice was received by the testator upon whom undue influence was presumptively exercised by proponent beneficiary is an evidentiary factor to be weighed, along with other evidence, in determining whether undue influence was exercised.

4. Same—Undue Influence—Presumptions—Evidence.

Once it is established a presumption exists that proponent had exercised undue influence upon testator, proponent has the burden of proof of showing by a preponderance of the evidence that undue influence was not operative, and the jury should be told of the existence of the presumption and that some weight should be given to it as embodying a course of experience, to be weighed against proponent's controverting evidence, if any has been introduced.

5. Evidence—Presumptions—Inferences.

Presumptions of law are almost invariably crystallized inferences of fact.

6. Same—Presumptions.

A stated fact is presumed, where experience has taught that if certain evidentiary facts be established, there is a strong likelihood that the stated fact will be true, but a presumption cannot be sustained if there is no rational connection between the facts proved and the utlimate fact to be presumed.

7. Trial—Presumptions—Burden of Proof.

The immediate legal effect of a presumption is procedural, the shifting of the burden of going forward with the evidence relating to the presumed fact.

8. Evidence—Presumptions—Fiduciaries—Undue Influence.

A presumption of undue influence arises from the fact of a fiduciary relationship, being founded on common experience, and since it is a presumption of fact, its force and effect is for the jury, depending upon the circumstances of the particular case.

9. Same—Presumptions—Inferences.

The fact that a conclusion is no longer compelled by legal presumption does not mean that it is no longer permissible by reasonable inference.

10. Trial—Directed Verdict—Evidence.

A directed verdict against a litigant is proper only if the evidence and permissible inferences therefrom, viewed most fa-

vorably to that litigant, leave no room for disagreement
thereon among reasonable men.

11. SAME—INSTRUCTIONS—EVIDENCE.

Jury instructions, given by a trial judge, involve the translation
of legal rulings into language comprehensible by the jury
and directly relevant to the evidentiary facts of the case
being tried.

12. SAME—PRESUMPTIONS—INSTRUCTIONS—EVIDENCE.

A jury should be instructed to apply a presumption of undue
influence unless it found from the evidence that the presump-
tion had been rebutted or there was an absence of clear, posi-
tive and credible presumption-rebutting evidence justifying
elimination of the presumption by the trial court as a matter
of law.

13. SAME—PRESUMPTIONS—INSTRUCTIONS.

No distinction is drawn between jury instructions applicable
to statutory presumptions and those applicable to common-law
presumptions, where the presumptions involved arise from
evidentiary facts of probative inferential worth, the manner
in which the jury is informed of the existence of the pre-
sumption and its effect varying according to the nature of the
evidentiary conflict in the case.

14. SAME—PRESUMPTIONS—INFERENCES.

A controverted presumption should be presented to the jury as
a conditional mandatory inference.

DETHMERS and KELLY, JJ., dissenting.


Appeal from Wayne; Gilmore (Horace W.), J.
Submitted February 5, 1964. (Calendar No. 32,
Docket No. 50,289.) Decided January 4, 1965.

In the matter of the estate of Albert F. Wood,
deceased, May A. Flemming presented for probate
a will, in which she and National Bank of Detroit
were named as executors, and a codicil thereto.
Contest was entered by Countessa Wood Hall, niece
of deceased. Directed verdict and judgment ad-

mitted will and codicil to probate. Defendant appeals. Reversed and remanded for new trial.

*Fildew, DeGree, Fleming & Gilbride (William D. Gilbride,* of counsel), for plaintiff-proponent Flemming.

*Harold R. Smith,* for plaintiff National Bank of Detroit.

*Moll, Desenberg, Purdy, Glover & Bayer (Lester S. Moll,* of counsel), for defendant-contestant.

Souris, J. This is a will contest case in which contestant attacked the validity of her uncle's alleged last will and a codicil thereto. Her uncle, Albert F. Wood, died in 1960 at the age of 91 years. At jury trial in circuit court contestant argued that the will and codicil should be set aside because their execution had been procured through undue influence exercised upon testator by proponent May Flemming. At the close of all proofs the court granted proponents' motion for a directed verdict, reasoning that there was nothing in contestant's proofs which would suffice to sustain a jury finding of undue influence.

On appeal, as at trial, contestant argues, and we agree, that sufficient evidence, viewed in the light most favorable to her (*In re Hartlerode's Estate,* 183 Mich 51, 54), was produced to establish the existence of a confidential or fiduciary relationship between Miss Flemming and testator and that, such relationship existing, the receipt, by Miss Flemming and interests which she represented, of benefits as a result of the questioned instruments raised a presumption that testator's execution thereof was secured by her undue influence. The jury might not have been willing to accept as preponderantly true the proponents' contrary proofs, in which event

the presumption would suffice to sustain a jury verdict for contestant. Under such circumstances, the trial judge should not have taken the case from the jury by his directed verdict.

In *Van't Hof* v. *Jemison*, 291 Mich 385, this Court had occasion to consider the definition of a confidential relationship. Defendants appealed from the chancellor's decree awarding to plaintiff the proceeds of certain bank accounts which had stood jointly in the names of one of the defendants and decedent.

"Another point in issue is whether there was a confidential or fiduciary relationship existing between Mrs. Mcyers and Mr. Jemison.

" 'One founded on trust or confidence reposed by one person in the integrity and fidelity of another. * * * The term is a very broad one. * * * The rule embraces both technical fiduciary relations, and those informal relations which exist whenever one man trusts in and relies upon another.' Black's Law Dictionary (3d ed), Fiduciary or Confidential Relations, p 775.

"The foregoing is but one of many definitions to be found of such a relationship.

"Mr. Jemison was acting in a capacity of trust and confidence in his dealings with and for Mrs. Meyers. She had the utmost faith in him. He was trusted in handling the bank accounts for her, and acted solely as her agent in these transactions. These acts would come within the definition. Such a relationship existing, the burden is upon defendants to show the validity of the gift and that no undue influence was exercised by the donee." 291 Mich 385, 393, 394.

3 Pomeroy, Equity Jurisprudence (5th ed, 1941), § 956a, is in accord with this broad definition:

"Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such a manner that other and perhaps new cases might be excluded. It is settled by an over-

whelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists *as a fact,* in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic, or merely personal. If a relation of trust and confidence exists between the parties— that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused—that is sufficient as a predicate for relief. The origin of the confidence is immaterial."

Contestant produced ample evidence that a confidential or fiduciary relationship, as this Court has broadly defined the terms, existed between testator and Miss Flemming, by which we mean only that a jury would have been entitled so to find on the basis of that evidence. Testator lived and worked on an upper floor of the four-story Wood building, in which Miss Flemming had occupied a ground-floor office for over 30 years. Miss Flemming was on duty at least five days a week, during which correspondence was channeled through her, as were testator's visitors and telephone calls. She paid herself and other employees by checks drawn upon testator's bank accounts and signed by her. On March 25, 1953, testator opened an individual checking account with power of attorney vested in Miss Flemming, and on June 27, 1957 he opened a joint savings account with her. Several safety deposit boxes were rented, access to which was had either by testator or Miss Flemming.

Miss Flemming was a trustee with important powers under certain trusts established by testator, and was an executrix of his challenged will. The chronology of trusts, wills, and other matters, including benefits obtained by Miss Flemming from testator

during his lifetime and by will, is set forth in the margin.[1]  Favorably viewing all these evidentiary

---

[1] On December 17, 1945, the Albert F. Wood Foundation was incorporated with Miss Flemming as one of the three trustees and incorporators, the other two being testator and his attorney.  At the same time testator executed a will which bequeathed his estate to Miss Flemming as trustee.  After making provision for his brother, testator instructed Miss Flemming to hold $40,000 in trust for contestant, and to pay her from such fund and its income $300 per month, Miss Flemming being given the power in the event of emergency "to advance such additional part of the principal as she may deem necessary."  Miss Flemming was directed to pay any residue of the estate to the foundation, and was also designated executrix.

In 1947 testator created a trust for his own benefit for life, the residue going to the Wood Foundation, and transferred to the trust estate certain realty, including the Wood building, and government securities.  The conveyance was to Miss Flemming and testator as trustees.

In 1954 testator executed the will under which contestant sought to claim.  It revoked previous wills and bequeathed $30,000 to Miss Flemming, leaving the residue of the estate, less other bequests, to contestant.  Testimony by Maud Wilkins, testator's housekeeper, indicated that Miss Flemming was surprised and displeased when she learned of the execution of this will.

The 1947 trust was revoked by testator in 1955 and a new trust created, again for his benefit, testator, Miss Flemming and the National Bank of Detroit being named as trustees.  The trust agreement included this provision:

"If said Albert F. Wood becomes incapacitated because of ill health or otherwise so that he cannot act as trustee, said May A. Flemming and National Bank of Detroit shall have and exercise all the power and authority granted to said trustees and said corporate trustee shall follow the directions and instructions of May A. Flemming with respect to disbursements to or for the benefit of grantor and said May A. Flemming shall employ physicians and supervise the medical care of grantor and the corporate trustee shall incur no liability with respect thereto."

Upon testator's death the bank and Miss Flemming were to hold any residue of his property in trust, paying contestant $300 per month, Miss Flemming $150 per month, and Maud Wilkins $65 per month.  The Wood building and $91,000 in government securities were transferred to the trust when the trust agreement was signed.

On December 19, 1956, testator executed the will advanced by proponents.  By its terms his estate was bequeathed to Miss Flemming and National Bank of Detroit as trustees under the 1955 trust agreement and they were also named as executors.  By an amendment to the 1955 trust, made on January 5, 1959, testator increased the payments to Miss Flemming to $300 per month, withdrew from the trust *res* the Wood building and another property, and ordered the trustees (of whom Miss Flemming was one) to convey such property to Miss Flemming.

On August 26, 1959, testator executed a codicil to the 1956 will stating that the trust agreement referred to in that will included

facts, we conclude that a jury could find a relationship of trust and confidence between testator and Miss Flemming; indeed, as a trustee she was a fiduciary. Once such a relationship is established and the fiduciary or an interest which he represents benefits therefrom, the law recognizes a presumption that he in whom trust was reposed exercised his influence unduly.

In *In re Hartlerode's Estate,* 183 Mich 51, contestant attacked provisions of her mother's will which bequeathed personalty and realty to her stepfather for life, and upon his death 1/2 to contestant and 1/2 to a church.

"At the trial in the circuit court, at the close of the testimony, the court directed a verdict and judgment for the proponent, and the will was admitted to probate. Contestant has appealed, and the principal contention is that there was a question for the jury upon the subject of undue influence. In stating the case the contestant's evidence is to be considered in its aspect most favorable to her; for, if, in giving contestant's evidence its strongest probative force, it was sufficient, unexplained, to support a verdict, then she was entitled to have the case submitted to the jury." 183 Mich 51, 53, 54.

The Court considered contestant's proofs and concluded that decedent's relations with the rector of the beneficiary church were such as to raise a presumption of undue influence, and therefore reversed for new trial.

"There are certain cases in which the law indulges in the presumption that undue influence has been used, as where a patient makes a will in favor of

amendments made through January 5, 1959.    On December 21, 1959, testator allegedly signed a letter, pursuant to the terms of which the National Bank of Detroit delivered to Miss Flemming a $100,000 United States treasury note.    Mr. Wood was born in July, 1868 and died January 6, 1960.

his physician, a client in favor of his lawyer, or a sick person in favor of a priest or spiritual adviser, whether for his own personal advantage, or for the advantage of some interest of which he is a representative. This rule has been recognized and applied by us." 183 Mich 51, 60.

It should not be thought, however, that the Court was restricting the presumption to the enumerated situations, for after discussing some cases supporting the presumption the Court (p 61) noted: "The case of *Ross* v. *Conway* (1892), 92 Cal 632 (28 P 785), is worthy of examination on this subject." 183 Mich 51, 61. In *Ross* plaintiff sought to set aside certain deeds of trust made for the benefit of a church and its pastor, alleging that they had been obtained by undue influence. In affirming a lower court finding favoring plaintiff, it was stated (pp 635, 636):

"The rule is inflexible that no one who holds a confidential relation towards another shall take advantage of that relation in favor of himself, or deal with the other upon terms of his own making; that in every such transaction between persons standing in that relation the law will presume that he who held an influence over the other exercised it unduly to his own advantage; or, in the words of Lord Langdale in *Casborne* v. *Barsham*, 2 Beav 76, 78 (48 Eng Rep 1108), the inequality between the transacting parties is so great 'that, without [any] proof of the exercise of power beyond that which may be inferred from the nature of the transaction itself, this court will impute an exercise of undue influence;' that the transaction will not be upheld unless it shall be shown that such other had independent advice,[2]

2 This particular language should not be taken to mean that no transaction between persons in a relation of trust and confidence will be upheld unless the party upon whom undue influence allegedly was exercised had independent legal advice with respect to the transaction. However, the presence or absence of in-

and that his act was not only the result of his own volition, but that he both understood the act he was doing and comprehended its result and effect. This rule finds its application with peculiar force in a case where the effect of the transaction is to divert an estate from those who, by the ties of nature, would be its natural recipients, to the person through whose influence the diversion is made, whether such diversion be for his own personal advantage, or for the advantage of some interest of which he is the representative. It has been more frequently applied to transactions between attorney and client or guardian and ward, than to any other relation between the parties, but the rule itself has its source in principles which underlie and govern all confidential relations, and is to be applied to all transactions arising out of any relation in which the principle is applicable. It is termed by Lord Eldon 'that great rule of the court that he, who bargains in [any] matter of advantage with a person placing confidence in him is bound to show, that a reasonable use has been made of that confidence.' *Gibson* v. *Jeyes,* 6 Ves, Jr 266, 278 (31 Eng Rep 1044). It was said by Sir Samuel Romilly in his argument in *Huguenin* v. *Baseley,* 14 Ves 273, 285, 286, 300 (33 Eng Rep 526, 531), that 'the relief stands upon a general principle applying to all the variety of relations in which dominion may be exercised by one person over another,'—a principle which was afterwards affirmed by Lord Cottenham in *Dent* v. *Bennett,* 4 Mylne & C 269, 277 (41 Eng Rep 105, 108), saying that he had received so much pleasure from, hearing it that the recollection of it had not been diminished by the lapse of more than 30 years." 28 P 785, 786.

From the foregoing authorities it is evident, then, that a presumption of undue influence was operative

dependent legal advice is an evidentiary factor which may be weighed, along with other evidence, in determining whether undue influence was exercised. See *Brown* v. *Canadian Industrial Alcohol Co.* (1930), 209 Cal 596, 599 (289 P 613, 614).

in this case of Wood, Miss Flemming, viewing contestant's evidence favorably, having been in a confidential and fiduciary relation to testator and the diversions effected by the questioned will and codicil having been "for [her] own personal advantage, or for the advantage of some interest of which [she] is the representative." *Ross, supra.* Proponents argue that the proofs at best established merely that Miss Flemming was testator's secretary and did not disclose that he reposed any special confidence in her, and further that if a presumption of undue influence did exist it was rebutted by evidence that an attorney was consulted in connection with preparation of the will and codicil and that the presumption having been rebutted, a directed verdict was proper. While the rebuttal evidence produced by proponents sufficed to overcome the force of the presumption of undue influence as a mandatory inference, it did not have the effect of overcoming the force of the presumption as a permissive inference to be submitted to the jury for evaluation.

Presumptions in the law are almost invariably crystallized inferences of fact.[3]  Experience has

---

[3] Few indeed are the presumptions recognized by the law which may not be viewed as logical inferences resulting from the probative force of certain basic evidentiary facts. Examples of those that are not, however, would seem to be statutory presumptions as to survivorship among persons meeting death in a common disaster, or a presumption not only that absence unexplained for seven consecutive years indicates death, but also that the death occurred on the last day of the seventh year. See the discussion in Morgan, Some Observations Concerning Presumptions, 44 Harv L Rev 906, 924–926 (1931). However, some presumptions which Morgan conceives of as having their origin only in procedural convenience, *e. g.*, that damage to goods was caused by the last carrier in a series having their custody, actually may be regarded as logical inferences. In that case, for example, it is reasonable to assume that, except for damage quite undetectable outside of the container, intervening carriers would not accept damaged goods unless an understanding was reached with the previous carrier. See, also, Laughlin, In Support of the Thayer Theory of Presumptions, 52 Mich L Rev 195, 212–222 (1953). *Cf.* Rule 14(b) of the Uniform Rules of Evidence [9a Uniform Laws Annotated, 1963 Cum Ann Pocket Part, p 197], which assumes that

taught that if certain evidentiary facts be established, there is such a strong practical likelihood that another stated fact will be true that that fact may be presumed.[4] The law's special recognition of this lesson of experience is expressed by its rulings that if a litigant proves evidentiary facts A and B, then fact C's existence will be presumed.

The immediate legal effect of a presumption is procedural—it shifts the burden of going forward with the evidence relating to the presumed fact.[5] Once there is a presumption that fact C is true, the opposing party must produce evidence tending to disprove either facts A and B or presumed fact C; if he fails to do so, he risks jury instruction that they must presume fact C to have been established.[6]

---

some presumptions may arise from facts which have no probative worth as evidence of the presumed fact.

[4] In *Greer* v. *United States* (1918), 245 US 559, 561 (38 S Ct 209, 62 L ed 469), Mr. Justice Holmes noted: "A presumption upon a matter of fact, when it is not merely a disguise for some other principle, means that common experience shows the fact to be so generally true that courts may notice the truth." See, also, *Tot* v. *United States* (1943), 319 US 463, 467, 468 (63 S Ct 1241, 87 L ed 1519), wherein Mr. Justice Roberts said: "Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts." Mr. Justice Bushnell's dissent (Butzel and Chandler, JJ., concurring) in *In re Haskell's Estate*, 283 Mich 513, 518, offers this commentary: "The confidential relationship of attorney and client existed between proponent and testatrix. A presumption of undue influence arises from the fact of this relationship, which presumption is founded on common experience. It is a presumption of fact, and its force and effect is for the jury, depending upon the circumstances of the particular case."

[5] *Baker* v. *Delano*, 191 Mich 204, 208, citing 1 Elliott on Evidence § 91: " 'The office or effect of a true presumption is to cast upon the party against whom it works the duty of going forward with evidence.' "

[6] *Baker*, *supra*, refers to 4 Wigmore on Evidence (1st ed 1905), p 3534, wherein it was said: "Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' (that is, the

Suppose, however, that such controverting evidence is produced. The initial force of the presumption as a procedural rule of law shifting to the opposite side the burden of going forward with the evidence to avoid a directed verdict is spent and so fact C is no longer the mandatory inference it otherwise would have been. Nonetheless, the evidentiary facts A and B from which fact C could be inferred, and would have been inferred mandatorily but for the controverting evidence, are still present for jury consideration. Instead of being a mandatory inference, fact C now is merely what it would have been but for the attachment of the term "presumption" to the particular evidentiary situation involved, namely, a permissible inference.[7] It may be that in

---

real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent."

Professor Wigmore, originally a strict exponent of the Thayer view that a presumption, if met by rebutting evidence, should not be mentioned to the jury, concluded in his last edition that in any event the jury should be informed of the presumption's existence, at least as embodying a course of experience. He noted: "It will thus be observed that the view is here accepted that the basic fact ought to have some special probative value other than its effect as a legal rule binding the jury, and that, even when the latter fails, there remains a probative value based on experience." See 9 Wigmore on Evidence (3d ed, 1940), § 2498a, p 341.

[7] See *e. g., Ryan* v. *Metropolitan Life Ins. Co.* (1939), 206 Minn 562 (289 NW 557). The case involved an appeal from a jury verdict against plaintiff in an attempt to recover on a life insurance policy. Plaintiff had relied upon a presumption against suicide and had assigned as error the trial court's failure to instruct the jury as to the existence of that presumption. Although the court held (improperly, in our view, as we shall see, *infra*) that such refusal was not erroneous, it nonetheless noted that even when evidence tending to rebut a presumption is introduced, the logical inference underlying the presumption requires submission of the issue to the jury (pp 570, 571):

"Most of what has been written on the subject, in and out of court, has treated the problem as though it could arise only in jury trials. That is wrong. If a presumption is not evidence, a trial judge has no more right so to consider it than he has to give it to a jury as evidence. When, however, the decision of fact has been made and it is under review, what was in earlier stages a presumption may come to the support of the verdict or finding. But if so, its weight is solely that of an inference. Its effect then is logical rather

the course of decision by a properly instructed jury fact C will again become more than a mere permissible inference, see discussion *infra,* but in any event, for the purpose of determining the propriety of a directed verdict where controverting evidence has been produced, it is at least a permissible inference. Thus, generally speaking, a verdict may not be directed solely because evidence tending to controvert facts A and B or presumed fact C has been introduced.

This does not mean, of course, that in no case when evidence is introduced controverting a presumption or the facts upon which a presumption is based may a verdict be directed. The standard used to determine the propriety of a directed verdict is the same as if the presumption, as a rule of law, were never involved—namely, a directed verdict against a litigant is proper only if the evidence *and permissible inferences therefrom,* viewed most favorably to that litigant, leave no room for disagreement thereon among reasonable men.[8]

---

than legal. Its function as a rule of law has ceased. Its only remaining force is as reasonable deduction from evidence.

"Of all that this case is illustrative. The evidence of Mr. Ryan's physical condition and its effect upon his mental attitude, together with the circumstances of his death, dispelled the presumption. That does not mean that plaintiff, having the burden of proof, necessarily failed as matter of law to sustain it. The presumption, as rule of law compelling decision, was dispelled by the evidence. But the facts, we assume, may still have permitted an inference by the fact triers, with the same result as, without evidence, the presumption would have required. In short, the fact that a conclusion is no longer compelled by legal presumption does not mean that it is no longer permissible by reasonable inference." 289 NW 557, 561.

[8] See, generally, *Schian* v. *Bierlein,* 369 Mich 219. See, also, Laughlin, In Support of the Thayer Theory of Presumptions, 52 Mich L Rev 195, 224 (1953): "The presumption having disappeared with the introduction of rebutting evidence [we inject our disapproval of the foregoing language, see *Petrosky* v. *Dziurman,* 367 Mich 539, 544], the question of a proponent's being entitled to have a case which is based upon the surviving inference submitted to the jury therefore depends upon whether or not in view of the nature of rebutting evidence it can be said that reasonable minds would differ or agree."

In *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410, the Court considered the propriety of a directed verdict in a negligence

That the bench and bar may not be led astray by our present pronouncements, it is perhaps appropriate that we say a few words concerning jury instructions in cases in which presumptions are involved. Before we do, however, we caution bench and bar, as we did in *Frederick* v. *City of Detroit*, 370 Mich 425, 431, 432, that the language we use in this appellate opinion may not be adopted uncritically for purposes of jury instruction. What we write is written for minds drilled in the ways of the common law, skilled in applying legal abstractions to evidentiary facts, and not for the instruction of jurors. That frequently difficult task of jury instruction rests in the first instance with the trial judge who must translate our legal rulings, cast in the law's shorthand abstractions, into language comprehensible by the jury and directly relevant to the evidentiary facts of the case being tried. See our similar comment in *Hill* v. *Harbor Steel & Supply Corp.*, 374 Mich 194, 207.

We have held with respect to statutory presumptions that in the absence of "clear, positive, and credible presumption-rebutting evidence that would justify elimination of the presumption by the trial court as a matter of law", the jury should be "instructed to apply the presumption unless it found from the evidence that the presumption had been rebutted." *Garrigan* v. *LaSalle Coca-Cola Co.*, 362

case in which plaintiff had relied upon a presumption of due care. After reviewing various decisions, the Court correctly stated the rule respecting directed verdicts (p 421): "While the above may serve as a rough classification of the decisions relative to the presumption of due care, it will be seen that the real test in each case is whether or not the evidence tending to show contributory negligence, be it direct or circumstantial, is so conclusive that reasonable and unprejudiced minds could not fail to be convinced that decedent was careless. If there is room for reasonable doubt, the question must be submitted to the jury." On the facts the Court affirmed a directed verdict because (pp 429, 430) "The inevitable conclusion to which all unprejudiced minds must come is that in either event plaintiff was clearly guilty of contributory negligence."

Mich 262, 267. In the case of common-law presumptions, *e.g.*, that of due care, we have held that a party in whose favor the presumption operates is entitled to an instruction that "the jury should entertain a presumption that decedent was acting with due care unless they found contrary and credible testimony." *Britten* v. *Updyke*, 357 Mich 466, 473. It appears from our prior opinions that we have drawn no distinction between jury instructions applicable to statutory presumptions and those applicable to common-law presumptions,[9] nor can we see any compelling reason in logic or policy for such a distinction, assuming, of course, that the presumptions involved arise from evidentiary facts of probative inferential worth.

The manner in which the jury is informed of the existence of the presumption and its effect will vary according to the nature of the evidentiary conflict in the case:

(1) If plaintiff's presumed fact C is based on evidentiary facts A and B, and defendant introduces evidentiary facts which if true would disprove facts A and B and so preclude fact C as a logical infer-

---

[9] Thus *Garrigan*, 362 Mich 262, which dealt with statutory presumptions, cited, *inter alia*, as authority for its conclusions *Britten* v. *Updyke*, 357 Mich 466, dealing with common-law presumptions. *Garrigan* in its turn was cited as authority in *Knickerbocker* v. *Samson*, 364 Mich 439, 448, 449, which approved an instruction that if the jury found plaintiff suffering from traumatic amnesia, he was entitled to a presumption of freedom from negligence until the presumption was overborne by factual evidence. The Court noted that no positive and credible evidence opposing the presumption had been introduced. *Garrigan* was also cited in *Petrosky* v. *Dziurman*, 367 Mich 539, 544, wherein plaintiff had relied upon a statutory presumption of negligence in a rear-end collision case. Reversing a directed verdict for defendant, the Court in *Petrosky* adopted this language of Mr. Justice Black's concurring opinion in *Garrigan*:

"'When the judge, presiding at jury trial of a negligence case, assumes to instruct that an admittedly applicable presumption has vanished, he should have before him "direct, positive and credible rebutting evidence" on the basis of which he really may pronounce death sentence for the presumption. Otherwise the question whether such presumption has been overcome should be settled—on proper instruction of course—in the jury room.'" 367 Mich 539, 544, 545.

ence, the jury should be instructed concerning the evidentiary conflict and told that only if it believes plaintiff's evidence of facts A and B should it presume fact C to be. true. The presumption as it goes to the jury under these circumstances is a conditional mandatory inference.[10]

(2) However, instead of introducing evidence directly controverting plaintiff's facts A and B, defendant might introduce evidentiary facts D and E, whose existence would not be inconsistent with facts A and B but from which could be inferred the nonexistence of presumed fact C. In such circumstances the jury could believe both sets of evidentiary facts without logical inconsistency, and so have two different inferences open to it. By instruction the jury should be told of the existence of the presumption of fact C, and that some weight may be given to it as embodying a course of experience, but that the jurors are not bound by law to find the presumed fact if they find that the inference permissible from facts D and E overcomes the inference of fact C.[11]

(3) If defendant attacks plaintiff's evidentiary facts A and B and, in addition, presents evidentiary facts D and E permitting an inference inconsistent with the presumption of fact C, the jury should be

---

[10] See this language in *Gillett* v. *Michigan United Traction Co.*, 205 Mich 410, 421, dealing with the presumption of due care in negligence actions: "And while the jury, in weighing the evidence, may not consider the presumption, yet if, uninfluenced by the presumption, they reach the conclusion that the evidence tending to show decedent's negligence is not entitled to credit and should be disregarded, the presumption may then be considered as remaining in force so far as may be necessary to establish the fact that the deceased exercised proper care in all respects not expressly established by the evidence. It was not entirely displaced, but remained in abeyance pending the jury's reaching this preliminary decision as to the credence to be given the evidence on the particular point in which negligence was claimed." As further indicating this Court's adherence to the proposition that a controverted presumption should be presented to the jury as a conditional mandatory inference, see our unanimous opinion in *Petrosky* v. *Dziurman*, 367 Mich 539, 544, 545.

[11] See footnote 6, *supra*, p 289.

instructed that if the jurors believe facts A and B and disbelieve facts D and E, then they must presume fact C to have been established, but if they disbelieve facts A and B or if they conclude as practical men and women that the inference permissible from facts D and E has a closer relation to the circumstances of life as they know them than does presumed fact C, then they should find that fact C has not been proved. In such a situation the presumed fact C is a mandatory inference only in the event that the jury believes facts A and B and regards presumed fact C as a more likely inference than that permitted by facts D and E.

(4) Finally, in every case in which evidence has been offered to rebut presumed fact C, the jury should be instructed that in the event it cannot decide upon which side the evidence preponderates, then as a matter of law fact C must be presumed.

It follows from an application of the foregoing precepts to this case of Wood that we must hold that the trial court erred in directing a verdict against contestant. Contestant relied upon a presumption of undue influence arising from evidentiary facts of the existence of a confidential relationship between testator and Miss Flemming and of the receipt of benefits by Miss Flemming as a result of such relationship. Proponents countered in two ways. First, they introduced directly controverting evidence against the contestant's evidentiary facts giving rise to the presumption.[12] Second, proponents introduced evidentiary facts (that testator's 1959 codicil was prepared by, and executed in the presence of, an attorney) which did not controvert contestant's evidentiary facts, but from which the jury could draw an inference that testator

---

[12] Proponents disputed the existence of a confidential relationship between testator and Miss Flemming.

had received effective independent legal advice in disposing of his estate, which inference was permissibly inconsistent with contestant's presumed fact of undue influence. We may refer to proponents' evidence of this nature as "inferentially inconsistent evidence". Until resolution of the factual issues thus presented the presumption of undue influence could not be characterized as a mandatory inference, but it nonetheless remained in the case as at least a permissible inference, thereby forestalling, except in circumstances noted *supra,* a directed verdict against contestant.

It is evident that the instructional context of this case is similar to that considered *supra* in paragraph (3). Accordingly, the jurors should have been instructed that if they believed contestant's proofs of a confidential relationship and of receipt of benefits resulting therefrom rather than proponents' evidence negating a confidential relationship[13] and if they also disbelieved the inference, that testator had independent legal advice in making testamentary disposition of his estate, an inference permissible from proponents' evidence,[14] then they should presume that undue influence had been proved. However, if the jury disbelieved contestant's evidentiary facts and instead accepted as true proponents' evidence that no confidential relationship existed *or* if, while believing a confidential relationship existed, nonetheless they gave greater weight to the inference that testator had independent legal advice than to the inference of undue influence, then they should have been instructed to find that undue influence was not proved. Finally, the jury should have been instructed, in accordance with paragraph (4), *supra,* that in the event it could not decide upon which side the evidence for and against the presumed

---

[13] What we have called her directly controverting evidence, *supra.*
[14] What we have called her inferentially inconsistent evidence, *supra.*

fact of undue influence preponderated, then as a matter of law it should find that undue influence had been proved.

We recognize that the theory of presumptions and their function as here considered and applied runs counter to language in some earlier decisions, particularly those involving the presumption of undue influence. While attempting no detailed expurgation, it may be noted that in some cases which appear to be authority for the proposition that if evidence is introduced to rebut the presumption of undue influence, a directed verdict is in order, *e. g., In re Jennings' Estate,* 335 Mich 241, the discussion is dictum, while in others, *e. g., In re Grow's Estate,* 299 Mich 133, affirmance of a directed verdict against a contestant was probably justified because contestant's proofs were insufficient, even viewed favorably, to establish a confidential relationship, or, as in *Hill* v. *Hairston,* 299 Mich 672, the review was *de novo* and so this Court itself was sitting as trier of the facts. However, it is our view now that cases like *In re Haskell's Estate,* 283 Mich 513, and *In re Teller's Estate,* 288 Mich 193, were erroneously decided and, therefore, should be overruled expressly. In both of those cases this Court rejected contestants' claims on the ground that presumptions of undue influence arising from fiduciary relationships had been "overcome", as a matter of law, by evidence of independent legal advice. The issue should have been submitted for the jury's decision in each case.

Reversed and remanded. Costs to appellant.

Kavanagh, C. J., and Black, Smith, and Adams, JJ., concurred with Souris, J.

Dethmers, J. (*dissenting*). I do not agree with Mr. Justice Souris' apparent thesis that the pre-

sumption of undue influence arising from proofs of the existence of a fiduciary relationship between the testator and a beneficiary under the will may be permitted to stand as evidence in the face of rebuttal evidence. Such presumption may be introduced to supply the want of real facts but does not obtain against substantive proofs. When positive proof enters the door, contrary presumptions of this character fly out the window. *Michigan Aero Club* v. *Shelley,* 283 Mich 401 (1938 US Av R 134, 1 Av [CCH] 750); *Bradford* v. *Goldman,* 290 Mich 338. Presumptions cannot be weighed against credible evidence. *Krisher* v. *Duff,* 331 Mich 699; *Heckler* v. *Laing,* 300 Mich 139.

I am unwilling to join in overruling *In re Teller's Estate,* 288 Mich 193, or in washing out the discussion of the presumption question in the case of *In re Jennings' Estate,* 335 Mich 241, as mere dictum or overruling it by implication or otherwise.

In *Teller* and *In re Bromley's Estate,* 113 Mich 53, and *In re Grow's Estate,* 299 Mich 133, the presumption was held to have been rebutted by proof that the will had been executed, as here, after the testator had secured independent legal counsel in preparation and execution of his will. So, too, in the *Jennings Case.* In *Grow* it was so held as a matter of law.

I am unwilling to join in exposing every will, in which one in a fiduciary relationship to the testator was made a beneficiary, to the speculations of a jury as to undue influence when the only evidence in the case is to the contrary. That would impinge too greatly on the right of the testator to determine the objects of his bounty and to include among them those who were particularly kind or helpful to him. Devoted children, relatives, or trusted friends of the testator would respond at their peril to his requests for business advice or assistance if that

would automatically subject his natural desire, expressed in his will, to compensate or reward them, not only to a presumption of invalidity but also to jury guesswork, in defiance of the only evidence on the subject which is contra. It would give a jury too much leeway, wafted on the wings of a presumption, to overcome the testator's will without any evidence to warrant it.

There having been no actual proof, independent of the presumption, of the exercise of undue influence here that overcame the will of the testator, judgment below, upholding the will, should be affirmed accordingly, with costs to plaintiffs-appellees.

KELLY, J., concurred with DETHMERS, J.

O'HARA, J. (*concurring*). I concur in the result reached by Mr. Justice SOURIS, but with Mr. Justice DETHMERS I am not prepared to overrule the precedential cases dealing with the evidentiary effect of presumptions as the term has been historically used.

The beneficiary here, as a trustee, stood in a fiduciary relationship to the testator. On the basis of the whole record the question of the exercise of undue influence was for the jury irrespective of the effect of any presumption.